UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLIVER L. VELEZ

        Plaintiff,

                                   07-cv-08524 (AKH)

v.

                                   CERTIFICATION OF
                                   <u>GREG CAPRA</u>

PRISTINE CAPITAL HOLDINGS INC.,
GREG CAPRA, AND FINANCIAL INDUSTRY
REGULATORY AUTHORITY,

Defendants.                           Return date: November 27, 2007

---

Greg Capra certifies and says:

      1.     I am the President and CEO of Pristine Capital Holdings ("PCH").

      2.     "PCH" is a holding company and the sole owner of two subsidiaries:

Pristine Services Inc. ("PSI") and Pristine Securities LLC d/b/a Mastertrader.com

("MTC").

      3.     PSI provides educational support and information services to active

securities traders via the internet, seminars, publications, and DVDs and is considered to

be a leader in the securities education industry.

      4.     MTC is a broker-dealer and member firm of the Financial Industry

National Regulatory Authority ("FINRA", until recently was known as the "NASD";

FINRA and NASD are used interchangeably throughout this Certification). Because of

its membership in FINRA, MTC is subject to the federal securities laws, and the rules

and regulations promulgated by FINRA and the Securities Exchange Commission.

5.     Oliver Velez and I co-founded PCH more than ten years ago, and we each own more than forty-seven (47) percent of the outstanding shares in the company. PCH, in turn, owns 100 percent of the two subsidiary companies. Until November 2006, Velez was employed as the Chairman and CEO of PCH, and I was its President, a position that I continue to hold presently.

6.     PSI, the subsidiary on the education side of PCH's business, develops new clients – investors who wish to learn how to transact profitably in the stock market. The new PSI clients are then referred to NASD member firm MTC, for execution of their transactions, if they decide to implement the knowledge provided to them for becoming self-directed traders.

7.     This is a significant part of the PCH business model, which required NASD approval of the cross-marketing between the nonmember firm, PSI, and the member firm, MTC, as a condition of permitting the promotional strategy. The regulator further required as a condition of its approval of the marketing tactics, that Velez and I become registered principals of MTC to ensure the NASD's oversight and jurisdiction over the supervising individuals: Velez and myself; the member firm MTC and the nonmember firm PSI; and the holding company PCH; regarding the marketing activities of the affiliated firms.

8.     Velez and I were the primary individuals involved in obtaining NASD approval of the marketing approach, and who were acting as MTC's, PSI's and PCH's principals and agents. Velez and I discussed submitting to the NASD's regulation at great length, and fully comprehended the regulatory purposes that required our licensure and registration with that self-regulatory organization. To meet the requirement, in 2001

2

we each executed a "Uniform Application for Securities Industry Registration" – the "U-4" and became "associated persons" and registered principals of MTC. A copy of the signature pages of our respective U-4s are annexed hereto as Exhibits "A" and "B".

9.    Both Velez and I reviewed the U-4 prior to completing it and discussed it in depth with each other and with others. Having previously been involved in an NASD arbitration proceeding that included PCH, PSI, MTC, Velez and me as parties, in which we were jointly and severally awarded more than $150,000.00 against another company (NASD Case No. 03-06185 – In Re: Pristine Securities LLC d/b/a Mastertrader.com, Pristine Services, Inc., Pristine Capital Holdings, Inc., Oliver L. Velez, and Gregory Capra v. Instinet Clearing Services, Inc., Terra Nova Trading, LLC, and George Muniz), we both clearly understood and were keenly aware that the U-4 contained an arbitration agreement and that required all of our companies, and both of us as individuals, to arbitrate our disputes between and among ourselves and others associated with the securities industry;

10.    In February of 2007, Velez and both resigned as licensed principals of MTC. However, by virtue of our ownership interests in PCH, both Velez and I continue to be associated persons of MTC.

11.    On November 20, 2006, Respondent Velez was relieved of his executive duties as Chairman and CEO and removed as an officer and director of PCH, as a result of the discovery of his conversion of more than $250,000.00 of corporate funds to his personal use, and for other misdeeds. The parties mutually agreed that Velez would remain employed by PCH in an undefined capacity, pending an investigation into his

3

apparent malfeasance, and pending the negotiation of a schedule for the repayment by Velez of the converted funds.

12.     The ensuing inquiry ultimately revealed additional misconduct. From the time that he was relieved of his duties in 2006, if not earlier, Velez was surreptitiously commencing the formation of a new company, Velez Capital Management ("VCM"), to compete directly against PCH. Velez had usurped corporate opportunities on behalf of VCM, and breached other fiduciary duties to PCH. He had committed major violations of company policy; he had removed, disclosed and used PCH intellectual property without permission. He had also induced the breach of employment contracts by key employees; contracts that he himself had previously negotiated for the benefit of PCH.

13.     Velez' misconduct directly, substantially and negatively impacted the business of MTC, the NASD member firm subsidiary, as well as the business of the other subsidiary, PSI and of Respondent PCH, the holding company. Consequently, he was terminated by PCH on February 21, 2007.

14.     To redress our grievances, on or about August 27, 2007, PCH and I filed an arbitration proceeding against Velez, at FINRA Dispute Resolution (FINRA's arbitration facility) pursuant to the terms of the arbitration agreement contained in the U-4.

15.     Ultimately, because Velez was a licensed principal of MTC, and because of the nature of his termination in February, 2007, and related subsequent events, a mandatory, internal regulatory review and related filings with FINRA were triggered.

4

16.    To date, Velez refuses to cooperate with MTC in responding to and meeting NASD regulatory requirements related to his termination and to which he voluntarily submitted when he executed the U-4.

17.    The FINRA Dispute Resolution Statement of Claim detailing Velez' misconduct and demanding compensation for the conversion of funds, damages for breaches of fiduciary duties, inducement of breaches of employment contracts by key employees, punitive damages, legal fees and injunctive relief, includes but is not limited to a request for a Panel Order compelling Velez to comply with his regulatory obligations.  A true copy of the Statement of Claim filed with FINRA on August 27, 2007 is attached hereto as Exhibit "C" (the copy of the "Statement of Claim" annexed to Plaintiff's Petition in state court is not a true copy in that the photocopy included therewith cuts off the bottom line or two of each page).

18.    On September 21, 2007, Velez petitioned the Supreme Court of New York in New York County (Index No. 114221/07) to permanently enjoin the arbitration controversy filed with FINRA Dispute Resolution as FINRA Arbitration Number 07-2396, from proceeding.

19.    On October 2, 2007, PCH and I filed a Notice of Removal with the Clerk of the Southern District of New York and the Clerk of the Supreme Court of New York for New York County seeking to remove the state Complaint to the Southern District of New York.

20.    FINRA Dispute Resolution has reaffirmed its jurisdiction over the arbitration claim and Velez, by letter dated September 21, 2007, annexed hereto as Exhibit "D".

_Greg Capra_
Greg Capra

Dated: October 30, 2007

# EXHIBIT A

| Individual Name: VELEZ, OLIVER LIONEL | SSN: 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 |
|---|---|
| Individual CRD#: 3264135 | Firm CRD#: 47883 |

## U4 - SIGNATURE

1.  I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.

2.  I apply for registration with the *jurisdictions* and *SROs* indicated in Item 11 as may be amended from time to time and, in consideration of the *jurisdictions* and *SROs* receiving and considering my application, I submit to the authority of the *jurisdictions* and *SROs* and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the *jurisdictions* and *SROs* as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the *jurisdictions* and *SROs,* subject to right of appeal or review as provided by law.

3.  I agree that neither the *jurisdictions* or *SROs* nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the *jurisdictions* and *SROs.*

4.  I authorize the *jurisdictions* and *SROs* to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other *SRO* and I release the *jurisdictions* and *SROs* and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information.

5.  I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction.*

6.  For the purpose of complying with the laws relating to the offer or sale of securities or commodities, I irrevocably appoint the administrator of each *jurisdiction* indicated in Item 11 as may be amended from time to time, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process, pleading, subpoena or other document in any action or *proceeding* against me arising out of or in connection with the offer or sale of securities or commodities, or out of the violation or alleged violation of the laws of such *jurisdictions.* I consent that any such action or *proceeding* against me may be commenced in any court of competent *jurisdiction* and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in, the *jurisdiction.* I request that a copy of any notice, process, pleading, subpoena or other document served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto.

7.  I consent that the service of any process, pleading, subpoena, or other document in any *investigation* or administrative *proceeding* conducted by the SEC, CFTC or a *jurisdiction* or in any civil action in which the SEC, CFTC or a *jurisdiction* are plaintiffs, or the notice of any *investigation* or *proceeding* by any *SRO* against the applicant, may be made by personal service or by regular, registered or certified mail or confirmed telegram to me at my most recent business or home address as reflected in this Form U-4, or any amendment thereto, by leaving such documents or notice at such address, or by any other legally permissible means.

    I further stipulate and agree that any civil action or administrative *proceeding* instituted by the SEC, CFTC or a *jurisdiction* may be commenced by the service of process as described herein, and that service of an administrative subpoena shall be effected by such service, and that service as aforesaid shall be taken and held in all courts and administrative tribunals to be valid and binding as if personal service thereof had

been made. *[System Note: Due to a form conversion error, the preceding sentence was omitted from the electronic version of this Form U-4 for filings made through Web CRD from August 16, 1999 to October 13, 2000.]*

8.  I authorize all my employers and any other person to furnish to any *jurisdiction,* SRO, employer, prospective employer, or any agent acting on its behalf, any information they have, including my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination. Moreover, I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U-5). I recognize that I may be the subject of an investigative consumer report and waive any requirement of notification with respect to any investigative consumer report ordered by any *jurisdiction, SRO,* employer, or prospective employer. I understand that I have the right to request complete and accurate disclosure by the *jurisdiction, SRO,* employer or prospective employer of the nature and scope of the requested investigative consumer report.

9.  I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Items 4 and 10 of this form. I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported. Further, I represent that, to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete.

10. I authorize any employer or prospective employer to file electronically on my behalf any information required in this form or any amendment thereto; I certify that I have reviewed and approved the information to be submitted to any *jurisdiction* or *SRO* on this Form U-4 Application; I agree that I will review and approve all disclosure information that will be filed electronically on my behalf; I further agree to waive any objection to the admissibility of the electronically filed records in any criminal, civil, or administrative *proceeding.*

Applicant or applicant's agent has typed applicant's name under this section to attest to the completeness and accuracy of this record. The applicant recognizes that this typed name constitutes, in every way, use or aspect, his or her legally binding signature.

(All applicants must execute this page.)

Date (MM/DD/YYYY)          Signature of Applicant
06/12/2001                 OLIVER VELEZ
                           Signature _____

**THE FIRM MUST COMPLETE THE FOLLOWING:**

To the best of my knowledge and belief, the applicant is currently bonded where required, and, at the time of approval, will be familiar with the statutes, constitution(s), rules and by-laws of the agency, *jurisdiction* or *SRO* with which this application is being filed, and the rules governing registered persons, and will be fully qualified for the position for which application is being made herein. I agree that, notwithstanding the approval of such agency, *jurisdiction* or *SRO* which hereby is requested, I will not employ the applicant in the capacity stated herein without first receiving the approval of any authority that may be required by law.

This firm has communicated with all of the applicant's previous employers for the past three years and has documentation on file with the names of the persons contacted and the date of contact. In addition, I have taken appropriate steps to verify the accuracy and completeness of the information contained in and with this application.

I have provided the applicant an opportunity to review the information contained herein and the applicant has approved this information and signed the Form U-4.

*The appropriate signatory area **must** be completed on all initial, amendment or Temporary Registration filings.*

The *appropriate signatory* area for Page 1 or Page 2 amendments consists of the date, signature and name lines below.

The *applicant* and *appropriate signatory* areas for Page 3 amendments consist of the date, signature and name lines for the *appropriate signatory* below and the date, signature and name lines for the *applicant* above.

The *applicant* and *appropriate signatory* areas for initial or Temporary Registration filings consist of the date, signature and name lines for the *appropriate signatory* below, together with the attestations that precede such lines, and the date, signature and name lines for the *applicant* above, together with the ten (10) numbered attestations that precede such lines for the *applicant*. For a Temporary Registration, *applicant* must also execute the Temporary Registration Acknowledgement.

| **Date** (MM/DD/YYYY) | **Signature of Appropriate Signatory** |
|---|---|
| 06/12/2001 | JAIME ANNEXY |
| | **Signature** |

# EXHIBIT B

| Individual Name: CAPRA, GREG EDWARD | SSN: 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 |
|---|---|
| Individual CRD#: 3264130 | Firm CRD#: 47883 |

## U4 - SIGNATURE

1. I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.

2. I apply for registration with the *jurisdictions* and *SROs* indicated in Item 11 as may be amended from time to time and, in consideration of the *jurisdictions* and *SROs* receiving and considering my application, I submit to the authority of the *jurisdictions* and *SROs* and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the *jurisdictions* and *SROs* as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the *jurisdictions* and *SROs,* subject to right of appeal or review as provided by law.

3. I agree that neither the *jurisdictions* or *SROs* nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the *jurisdictions* and *SROs.*

4. I authorize the *jurisdictions* and *SROs* to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other *SRO* and I release the *jurisdictions* and *SROs* and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information.

5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction.*

6. For the purpose of complying with the laws relating to the offer or sale of securities or commodities, I irrevocably appoint the administrator of each *jurisdiction* indicated in Item 11 as may be amended from time to time, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process, pleading, subpoena or other document in any action or *proceeding* against me arising out of or in connection with the offer or sale of securities or commodities, or out of the violation or alleged violation of the laws of such *jurisdictions.* I consent that any such action or *proceeding* against me may be commenced in any court of competent *jurisdiction* and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in, the *jurisdiction.* I request that a copy of any notice, process, pleading, subpoena or other document served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto.

7. I consent that the service of any process, pleading, subpoena, or other document in any *investigation* or administrative *proceeding* conducted by the SEC, CFTC or a *jurisdiction* or in any civil action in which the SEC, CFTC or a *jurisdiction* are plaintiffs, or the notice of any *investigation* or *proceeding* by any *SRO* against the applicant, may be made by personal service or by regular, registered or certified mail or confirmed telegram to me at my most recent business or home address as reflected in this Form U-4, or any amendment thereto, by leaving such documents or notice at such address, or by any other legally permissible means.

I further stipulate and agree that any civil action or administrative *proceeding* instituted by the SEC, CFTC or a *jurisdiction* may be commenced by the service of process as described herein, and that service of an administrative subpoena shall be effected by such service, and that service as aforesaid shall be taken and held in all courts and administrative tribunals to be valid and binding as if personal service thereof had

been made. *[System Note: Due to a form conversion error, the preceding sentence was omitted from the electronic version of this Form U-4 for filings made through Web CRD from August 16, 1999 to October 13, 2000.]*

8.  I authorize all my employers and any other person to furnish to any *jurisdiction,* SRO, employer, prospective employer, or any agent acting on its behalf, any information they have, including my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination. Moreover, I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U-5). I recognize that I may be the subject of an investigative consumer report and waive any requirement of notification with respect to any investigative consumer report ordered by any *jurisdiction, SRO,* employer, or prospective employer. I understand that I have the right to request complete and accurate disclosure by the *jurisdiction, SRO,* employer or prospective employer of the nature and scope of the requested investigative consumer report.

9.  I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Items 4 and 10 of this form. I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported. Further, I represent that, to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete.

10. I authorize any employer or prospective employer to file electronically on my behalf any information required in this form or any amendment thereto; I certify that I have reviewed and approved the information to be submitted to any *jurisdiction* or *SRO* on this Form U-4 Application; I agree that I will review and approve all disclosure information that will be filed electronically on my behalf; I further agree to waive any objection to the admissibility of the electronically filed records in any criminal, civil, or administrative *proceeding.*

Applicant or applicant's agent has typed applicant's name under this section to attest to the completeness and accuracy of this record. The applicant recognizes that this typed name constitutes, in every way, use or aspect, his or her legally binding signature.

(All applicants must execute this page.)

**Date (MM/DD/YYYY)**          **Signature of Applicant**
06/12/2001                     GREG CAPRA
                               **Signature**  _Greg Capra_

### THE FIRM MUST COMPLETE THE FOLLOWING:

To the best of my knowledge and belief, the applicant is currently bonded where required, and, at the time of approval, will be familiar with the statutes, constitution(s), rules and by-laws of the agency, *jurisdiction* or *SRO* with which this application is being filed, and the rules governing registered persons, and will be fully qualified for the position for which application is being made herein. I agree that, notwithstanding the approval of such agency, *jurisdiction* or *SRO* which hereby is requested, I will not employ the applicant in the capacity stated herein without first receiving the approval of any authority that may be required by law.

This firm has communicated with all of the applicant's previous employers for the past three years and has documentation on file with the names of the persons contacted and the date of contact. In addition, I have taken appropriate steps to verify the accuracy and completeness of the information contained in and with this application.

I have provided the applicant an opportunity to review the information contained herein and the applicant has approved this information and signed the Form U-4.

*The appropriate signatory area **must** be completed on all initial, amendment or Temporary Registration filings.*

The *appropriate signatory* area for Page 1 or Page 2 amendments consists of the date, signature and name lines below.

The *applicant* and *appropriate signatory* areas for Page 3 amendments consist of the date, signature and name lines for the *appropriate signatory* below and the date, signature and name lines for the *applicant* above.

The *applicant* and *appropriate signatory* areas for initial or Temporary Registration filings consist of the date, signature and name lines for the *appropriate signatory* below, together with the attestations that precede such lines, and the date, signature and name lines for the *applicant* above, together with the ten (10) numbered attestations that precede such lines for the *applicant*. For a Temporary Registration, *applicant* must also execute the Temporary Registration Acknowledgement.

**Date** (MM/DD/YYYY)              **Signature of Appropriate Signatory**
06/12/2001                         JAIME ANNEXY

                                   **Signature** _____

# EXHIBIT C

FINRA DISPUTE RESOLUTION

In the Matter of the Arbitration between

GREG CAPRA AND PRISTINE CAPITAL
HOLDINGS INC.,

                    Plaintiffs,

and                                   STATEMENT OF CLAIM

OLIVER L. VELEZ,

                    Respondent.

Plaintiffs Greg Capra and Pristine Capital Holdings, Inc., through the undersigned

attorney, by way of Complaint against Respondent Oliver Velez, state as follows:

### **Parties**

1.       Plaintiff Greg Capra is one of the co-founders of Pristine Capital Holdings,

Inc., ("PCH"), as well as a forty-seven (47) percent shareholder.  He is currently PCH's

President and CEO.  At various relevant times herein, he was a registered principal of Pristine

Securities LLC d/b/a Mastertrader.com ("MTC"), the broker-dealer subsidiary of PCH, and a

FINRA member firm.

2.       Plaintiff PCH is a Delaware corporation with its principal place of business

located at 7 – 11 Broadway, Suite 210, White Plains, New York 10601.    It has two wholly

owned subsidiaries, one of which is denominated Pristine Services Inc ("PSI"), and the other

is MTC.

3.       Respondent Oliver Velez ("Velez") is the former Chairman and CEO of PCH,

a co-founder and a forty-seven percent shareholder.  During relevant times herein, he was a

registered principal with MTC, the broker-dealer subsidiary of PCH. He is presently the CEO of Velez Capital Management LLC ("VCM").

    4.      VCM is a New York limited liability corporation, with principal offices located at 130 West 42nd Street, Suite 450, New York, NY 10036.

### Facts

    5.      Plaintiff, through one of its subsidiaries, provides educational support and information services to active securities traders via the internet, seminars, publications, and DVDs and is considered to be a leader in the securities education industry.

    6.      Combined, these services are known to clients and to the public by the registered service marks and trademarked sales, marketing and educational process – "The Pristine Method®" ("TPM®").

    7.      For more than ten years, Velez had been the "face" of the company. On November 20, 2006, however, Respondent Velez was relieved of his executive duties as Chairman and CEO and removed as an officer and director as a result of his conversion of more than $250,000.00 of corporate funds to his personal use.

    8.      He was later terminated on February 21, 2007 by PCH for breaches of fiduciary duty, a number of major violations of company policy, including, but not limited to, the conversion of funds; removing, disclosing and using PCH intellectual property without permission; and for surreptitiously commencing the formation of his new company, VCM, that would directly compete against PCH.

    9.      No later than in November of 2006, after he was relieved of his executive duties, Respondent Velez conceived and commenced a plan of retaliation against his former company. The gist of his plan was the secret formation of VCM.

10.    Although he was relieved of his executive duties in November of 2006, he was still employed by PCH through February 21, 2007. During that time, Velez and the company were negotiating the repayment of the stolen funds and Velez's future role with the firm.

11.    Velez was not negotiating in good faith, however. Contemporaneous with the discussions, the purpose of which was to rehabilitate Respondent Velez as to his future role with the firm, he was surreptitiously creating VCM.

12.    To fulfill the objective of forming VCM, he registered two websites, one on December 20, 2006 and another on February 14, 2007, while still in the employ of PCH.

13.    A primary source of PCH's revenues is the distribution and sale of seminar presentations conducted live on site and via the internet, and recorded on DVDs and other electronic media.

14.    With the benefit of hindsight, it is now clear that soon after he was relieved of his executive duties as CEO of the company in November, 2006, Velez surreptitiously began collecting and copying confidential information, such as customer lists, the electronic files of the referenced seminars, and other company confidential material and intellectual property, for his illicit use in creating VCM.

15.    By January, 2007, if not earlier, and while still in the employ of PCH, Velez was also secretly developing relationships with other companies, which he claimed were for the benefit of PCH.

16.    Further, he ignored the insistent requests of other PCH executives that he not develop associations with certain individuals whose reputation was inconsistent with PCH's corporate image, policies and objectives, and that all new associations including those with reputable businesses, be fully disclosed to PCH.

17.    Contrary to these instructions, Velez proceeded to promote a joint seminar with a company of poor reputation in the "prop" trading industry ("HLV Trading"). When confronted by PCH management at that time, Velez intentionally deceived them by falsely claiming that the advertised event was for the exclusive benefit of PCH, when in fact the purpose of the seminar was the launching of VCM, Velez's new venture and future competitor of PCH.

18.    It is incontestable that Velez's actions were in breach of his fiduciary duties and his duty of loyalty to PCH, of which he presently continues to be a 47% owner.

19.    As demonstrated by emails sent by a company Vice-President to Velez on February 12, 2007, in which the executive complained to Velez that his inexplicable, bizarre, public association with a securities industry entity of dubious reputation, was causing confusion and discomfort among PCH staff and its customers:

> "[Our customers and employees] see HLV [the entity of ill repute referenced *supra*] commercials on CNBC for you doing a seminar with [a potential competitor] and wonder what the hell is going on. You tell us that it's nothing to worry about because you are "just" doing a book signing and will only be there for the last 5 minutes. Well I find it hard to believe that HLV is going through all this marketing just for 5 minutes of your time to sign books. There is no mention of any book signing.... It's marketed as a seminar that you are doing and they removed all links [from the HLV website] to Pristine. On top of all that, [our employees] are all in the dark about this. No one was informed about this. We have to find out about it via our clients. But not only that, you proceeded to set this up in a clandestine manner.

20.    In fact, despite Velez's unequivocal denials, his presence at the HLV seminar held at the New York On-Line Traders Expo (February 17 – February 20, 2007) – the country's premier event for members of the securities education industry like PCH – was

heavily promoted and advertised by HLV on February 8 and February 9, 2007 on the HLV website's home page and via television commercials on CNBC, while Velez was still employed by PCH.

21.    The objectionable seminar took place on February 18, 2007 as advertised. When PCH employees attempted to attend in order to observe Velez's role at the presentation, they were physically blocked from entering the room. Their exclusion was for reasons that later became obvious. Velez was using the venue to launch his new company, VCM.

22.    Accordingly, Velez was immediately terminated, by letter dated February 21, 2007.

23.    Because Velez had been a licensed principal of MTC, and because of the nature of his termination, in time it triggered a mandatory, internal regulatory review and related filings with FINRA.

24.    The seminar event, in concert with the previous discovery of the conversion of a quarter million dollars in corporate funds to his personal use, which included lavish dinners, and illicit, substantial cash advances against his Corporate American Express Card at "strip clubs" (Exh. "1"), were the precipitating, but not the only factors that resulted in Velez's termination.

25.    In response to his termination, Velez clearly indicated his mistaken belief that the proprietary information and materials underlying "The Pristine Method®" belonged to him, and that he could use them as he saw fit.

26.    Contemporaneous with his termination from PCH, Velez was illicitly inducing certain key employees of PCH – Paul Lange, Saul Ortiz and Stephen Cina (the "former employees") – to breach their employment contracts with PCH.

27.     On or about 2/14/07 Velez hired Ortiz for his new venture, prior to Velez's termination with PCH. On or about 3/30/07 Velez hired Lange. On or about 4/25/07, Velez hired Cina. A present review of Velez's, Ortiz's and Cina's actions between December of 2006 and March of 2007, clearly indicates that the three were conspiring around that time regarding their exit strategy, even before Velez was terminated.

28.     Except for the date of execution, the former employees' employment contracts were identical, and contained explicit restrictive covenants – non-compete, non-solicitation, and non-disclosure clauses at Paragraphs 3,4,5, and 6 thereof (Exhibit "2").

29.     Velez induced all of the former employees to breach their employment contracts, and in particular, the restrictive covenants. Further, there can be no doubt that he was completely conversant with the terms of their contracts, as he was the PCH executive who had originally signed them.

30.     In the course of their employment, Velez and the former employees had unfettered access to PCH's customer lists and other confidential and proprietary information. The materials taken by Velez and the key former employees, included critical information regarding its customers, specifically contact information, and a description of their needs and preferences for marketing purposes.

31.     The information was confidential and belonged exclusively to PCH, which had compiled it over many years, and at significant cost. It comprised vital marketing and competitive information that could cause grave damage to PCH, if placed in a competitor's hands, as Velez and the former employees have done.

32.     After the New York seminar in February of 2007, Velez quickly moved forward with his plan to develop a new company to compete with PCH, as evidenced by the

6

development of a website, key sections of which were copied directly from PCH's. Using a similar format, VCM showcased a management team that previously appeared on PCH's internet site, with repeated references to PCH. In identical fashion to PCH, it also promoted on site and on line seminars, on site trading "labs", a live internet trading chat room, DVDs and other publications that together constitute the marketing of The Pristine Method®.

33.    Also prior to his termination, Respondent Velez indicated that he was planning a seminar to be held in the first week of April, 2007 in Washington, D.C., under the auspices of PCH. Then, after his termination, Velez deceptively usurped this PCH corporate opportunity, and made the presentation in conjunction with other corporate interests.

34.    Most of PCH's customers initially learn the securities trading process and methodology known as the "The Pristine Method®," by attending seminars. The basics of the process are presented through a lengthy "Power Point" presentation, which consists entirely of materials that are subject to registered service marks, trademarks and copyrights.

35.    PCH offers two different seminars for different levels of expertise. Respondents Velez and VCM have fully co-opted one of the two presentations – the introduction to "The Pristine Method®". Indeed, in the manual provided to VCM seminar subscribers, which Velez has denominated "Trade for Life", approximately two thirds of the written presentation consists of charts lifted directly from the manual that is used by PCH to introduce "The Pristine Method®" to new clients.

36.    According to VCM's website, the next and most audacious step until that time, in Velez's brazen plan to ruin PCH, took place in San Diego, California, at the San Diego Traders Expo, on or about June 20, 21, 22, and 23, 2007 where Velez continued to illicitly

deploy the stolen intellectual property previously made public at the New York Online

Traders Expo, and other PCH property as well.

37.    Notwithstanding their agreement with PCH and Velez not to compete, solicit

and/or disclose, the former employees participated in the San Diego event too.

38.    Velez's actions have caused disruption and confusion among PCH's staff; its

client base, lists of which Velez illicitly spirited out of the firm prior to his termination, and

among the public.  His acts have lessened corporate morale, and in addition to the former

employees' departure, one other important employee has left PCH.  These departures from

PCH have caused substantial damages, and in a small company like PCH, with less than

twenty professionals on staff in its educational subsidiary at the beginning of 2007, a 25%

loss in key employees is an extraordinary one.

39.    On Velez's website, and in his promotional materials, he brags:

> "His 'Trade for Life' seminars and five day live trading
> sessions have been attended by more than 60,000 traders all
> over the world…."

The statement typifies the deceptive trade practices and false advertising that he and his new

company, VCM, have adopted. Velez has not presented to even one thousand people in

person since he departed PCH, much less 60,000 people.  In fact, it was the PCH

organization and its team of instructors who accomplished that feat over the last decade,

using the "The Pristine Method®", not the newly spawned "Trade for Life" ripoff that Velez

is presently relying upon.

40.    This intentionally confusing statement is an illicit attempt to exploit the

goodwill and registered service marks of "TPM®".  Also, by creating a website and

promotional material that trumpets Velez's prior connection with PCH in a misleading

manner, Velez further contributes to confusion among the public, especially the part that constitutes PCH's customer base.

41.     Velez has also interfered with PCH's advantageous business relations, particularly with its publisher, who, as a result of misleading statements and pressure by Velez, placed a moratorium on the publishing and promoting of certain PCH merchandise that had been recently produced, at significant expense to Plaintiffs; and with MTC's regulator, FINRA, by refusing to cooperate with MTC in making its mandatory regulatory filings related to Velez's termination.

42.     In sum, Velez and his new company are unfairly competing by using PCH's client lists, photocopies of TPM® materials, intellectual property, business contacts, goodwill, and former personnel who are in breach of employment agreements that were negotiated by Velez himself on behalf of PCH, with the intent to confuse the public, and to augment Velez's and VCM's competitive standing.

43.     To redress the injuries it has suffered, PCH seeks, *inter alia*, with respect to use of stolen intellectual and proprietary customer information, an accounting of all revenue derived from the use of PCH's confidential and proprietary information and the permanent enjoining of Velez from allowing the former employees from the continued breach of the covenants contained in their employment contracts.

44.     Upon a plenary hearing, PCH will also seek repayment of the $250,000.00 in converted funds;  a direction to Velez to comply with the contractual remedies contained in the employment contracts of the former employees, the breach of which he induced;  remedies of various common law violations; and additional compensatory and punitive damages.

## FIRST CAUSE OF ACTION
### (Conversion of funds)

45.     Respondent Velez converted at least $250,000.00 in corporate funds to his personal use, which remain due and owing to PCH.

## SECOND CAUSE OF ACTION
### (Conversion of intellectual property)

46.     Respondent Velez provided PCH intellectual property and confidential information to VCM customers and prospective customers without authorization from PCH, thereby depriving PCH of the revenues from the sale of DVD's, revenues from the sale of seminar admissions and other compensation.

## THIRD CAUSE OF ACTION
### (Inducement of Breach of Contract and Covenants Not to Compete, Not to Solicit and Not to Disclose Confidential Information)

47.     In their employment contracts the former employees agreed to covenants not to compete with PCH, not to solicit customers or employees, during their employment by PCH or for one year after their departure from PCH; and to never divulge PCH's confidential information.

48.     The former employees, by Velez's inducement, have breached the terms of their employment contracts by, within one year of their termination 1) joining VCM, a direct competitor firm; and 2) soliciting current and former PCH customers and employees.

49.     The former employees have also breached their covenant not to disclose confidential PCH information obtained during that employment, including but not limited to customer lists, pricing structures and stock trading processes, and information related to TPM®.

## FOURTH CAUSE OF ACTION
### (Refusal to Abide by NASD Supervisory and Regulatory Rules with the Intent of Harming MTC)

50.    In an attempt to cause damage to MTC, Respondent refuses to cooperate with MTC in fulfilling its regulatory duties.

51.    In consequence of his prior position as a Registered Principal of MTC, and his present status as an Associated Person of MTC, Velez is subject to the federal securities statutes, SEC regulations, and FINRA Rules, the enforcement of which are the mandated responsibility of MTC.

52.    Presently, Velez is in noncompliance of certain FINRA Rules and refuses to cooperate in providing information required under the rules, which may result in damaging regulatory action against MTC in the form of substantial sanctions and fines.

## FIFTH CAUSE OF ACTION
### (Unfair Competition)

53.    For over a decade, PCH, and "The Pristine Method®" ("TPM®") have set the standard for the education of active securities traders around the world.  The resources and methods used are all subject to registered service marks, trademarks and copyrights.  Velez and VCM, through repeated reference in advertising and promotional materials, and by cloning TPM® for Velez's and VCM's use, are causing great confusion among the trading community and the public at large, to the detriment of Plaintiffs.

54.    Respondent has engaged in a variety of acts, including the conversion of confidential information owned  by PCH to the use of VCM, in bad faith, and with intent to injure, weaken or destroy PCH's rights to and interests in TPM® and other marks, and to misappropriate highly valuable goodwill belonging to PCH.

11

## SIXTH CAUSE OF ACTION
### (Faithless servant)

55.    Respondent Velez's conduct is that of a faithless servant under New York law and he must disgorge all salaries earned and profits received both prior to and after his termination from PCH. *Duane Jones Company, Inc. v. Burke,* 306 N.Y. 172 (1954)

## SEVENTH CAUSE OF ACTION
### (Breach of Duty of Loyalty)

56.    Respondent Velez owed a duty of loyalty and other fiduciary duties to PCH as its Chairman and CEO and because of his 47% ownership interest.

57.    By commencing, surreptitiously, the formation of VCM while still employed by PCH, and as a 47% owner of PCH, and by inducing the former employees to breach their PCH employment contracts and the non-compete, non-solicitation, and non- disclosure covenants, Velez breached his duty of loyalty to PCH.

58.    By performing work for VCM while employed by PCH, Velez breached his duty of loyalty to PCH.

59.    By providing confidential PCH information to VCM, which is in direct competition with PCH, Velez breached his duty of loyalty to PCH.

## EIGHTH CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Advantage)

60.    In order to solicit and enter into relationships with current and former PCH customers, Velez has maliciously used confidential PCH information, including but not limited to customer lists and pricing structures.

61.    As a result of the intentional and malicious use by Respondent Velez and the former employees, of confidential PCH information in the course of their solicitation of other

current and former PCH customers, some of PCH's customers have terminated all or part of their relationships with PCH and/or entered into relationships with VCM.

62.    There is a reasonable probability that in the absence of the intentional and malicious use of confidential PCH information by respondent and VCM in the course of their solicitation of current and former PCH customers, those customers would not have terminated all or part of their relationships with PCH, and would have continued their relationships with PCH.

63.    Respondent and the former employees have used confidential information to solicit PCH customers with the intent to harm PCH.

**WHEREFORE**, plaintiff respectfully requests the following relief:

A.    The repayment of the $250,000 of corporate funds unlawfully converted to Velez's personal use.

B.    Additional compensatory damages in an amount not less than $750,000.00, plus attorney's fees, pursuant to the terms of the former employee contracts, and fees and costs related to this proceeding.

C.    On all of PCH's Causes of Action, punitive damages in an amount no less than $1,000,000.00.

D.    Permanent injunctive relief:

1.    Directing Velez to immediately Cease and Desist from inducing the breach of the employment agreements of the former employees, which contain restrictive covenants forbidding them from competing with Plaintiff for one year after their employment terminates with PCH; from soliciting Plaintiff's customers or employees for one year after their employment terminates with PCH; and from ever disclosing the confidential information of PCH.

2.      Directing Respondent to Cease and Desist from using materials obtained from PCH, including but not limited to materials taken from "The Pristine Method®" manual;

3.      Directing Respondent to immediately Cease and Desist from copying and using Plaintiffs' copyrighted and trademarked material, and registered service marks, including but not limited to The Pristine Method®;

4.      Directing Respondent to immediately Cease and Desist from copying materials copyrighted and trademarked by Plaintiffs and presenting them to the public as part of the "Trade for Life" methods and seminars presented by Velez Capital Management;

5.      Directing Respondent to immediately Cease and Desist from presenting to current and future customers "The Pristine Method®" and other registered and trademarked materials, disguised as "Trade for Life";

6.      Directing Velez and VCM to provide an accounting of all compensation and revenues received by Velez and VCM to date; and

7.      Directing Velez and VCM to disgorge all salaries and profits, paid to Velez and to the former employees; to return all PCH materials removed during the term of their employment; and to identify and erase and/or return as applicable, all electronic records taken from PCH during the term of their employment.


                                                         _____

                                                          Dan A. Druz
                                                          Attorney for Claimants
                                                          291 E. Main St.
                                                          Suite 1000
                                                          Manasquan, NJ  08736
                                                          732-223-7676

Dated: August 17, 2007

# EXHIBIT D

FINRA Dispute Resolution

Northeast Region
One Liberty Plaza | 165 Broadway, 27th Floor | New York NY | 10006-1404 | 212.858.4200 | Fax 301.527.4873



September 21, 2007

Oliver L. Velez
14 Richbell Road
White Plains, NY 1065

Subject:      FINRA Dispute Resolution Arbitration Number 07-02396
              Greg Capra and Pristine Capital Holdings Inc. v. Oliver L. Velez

Dear Mr. Velez,

Further to Claimant's letter dated September 18, 2007, we write to confirm that your submission to this arbitration is mandatory and not voluntary. The service letter dated September 14, 2007 sent to you was incorrect due to clerical error.

Therefore, you are required by the Rules of FINRA Dispute Resolution to arbitrate this matter. Any inconvenience as a result of the aforesaid error is regretted.

Very truly yours,

Paula Union
Case Administrator
212-858-4200 FAX:301-527-4904

PRU:CXM:LC53A
idr.07/07

CC:
        Dan A. Druz, Esq., Greg Capra
        291 E. Main St., Suite 1000, Manasquan, NJ  08736
        Dan A. Druz, Esq., Pristine Capital Holdings Inc.
        291 E. Main St., Suite 1000, Manasquan, NJ  08736

RECIPIENTS:
        Oliver L. Velez
        14 Richbell Road, White Plains, NY  1065