FRANKLIN I. OGELE (FO-0040)
LAW OFFICE OF FRANKLIN OGELE
ONE GATEWAY CENTER, SUITE 2600
NEWARK, NJ 07102
ATTORNEY FOR OLIVER L. VELEZ

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------X

| | |
|---|---|
| OLIVER L. VELEZ | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK INDEX #07/112799 |
| Plaintiff | |
| | CIVIL ACTION #07-CV-08524 (AKH) |
| vs. | |
| | OLIVER VELEZ MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND |
| FINANCIAL INDUSTRY | AND/OR DISMISS THE NOTICE |
| REGULATORY AUTHORITY | OF REMOVAL BEFORE THE UNITED |
| GREG CAPRA AND | STATES DISTRICT SOUTHERN DISTRICT |
| PRISTINE CAPITAL HOLDINGS, INC. | OF NEW YORK |
| Defendants | |

-----------------------------------------------X

OLIVER L. VELEZ, ("Velez") through his Counsel, Franklin I. Ogele, Esq. hereby files this Memorandum of Law in support of his Motion to Remand and/or Dismiss the Removal Notice (Index #07-CV-08524 above) and for Attorney Fees and Costs.

PROCEDURAL POSTURE

In June 2007, Pristine Capital Holdings Inc. ("Pristine Capital") filed a lawsuit against Velez in the Federal District Court, Southern District of New York, alleging copyright and trademark infringement among other causes of action. The lawsuit was so glaringly deficient in terms of the requirements of Well-Pleaded Complaint Rule that Hon. Judge William Pauley III correctly described it as a *"train wreck"* and recommended that the suit be withdrawn. Pristine Capital took counsel and later withdrew the suit. ***See Exhibit 1.***

1

After withdrawing the federal suit, Pristine Capital joined with Greg Capra ("Capra") and filed an Arbitration Complaint against Velez before the Financial Industry Regulatory Authority ("FINRA")[1] seeking to arbitrate the same claims which Pristine Capital had alleged in the withdrawn federal lawsuit. The Arbitration Complaint did not include the alleged copyright and trademark infringement claims. Moreover, the FINRA member firm (Pristine Securities) *was not* a Plaintiff Arbitration Complaint and the Statement of Claim (except for Cause of Action #4) has absolutely nothing to do allegations of *Velez' misconduct while employed or registered with Pristine Securities.* The allegations all had to do with Velez' employment with Pristine Capital, the holding company of Pristine Securities. Pristine Capital is *not* a FINRA member. ***See Exhibit 2.***

On or about September 20, 2007, Velez filed a Petition before the Supreme Court of the State of New York, County of New York, seeking to Permanently Stay the FINRA Arbitration ("Velez' Motion to Stay"). Velez' Motion to Stay is based on New York case law that requires that a person must consent in writing before he or she may be compelled to arbitrate. ***See Exhibit 3.***

Velez' Motion to Stay, after two motion calls, was submitted to Honorable Judge Jane Solomon of the New York Supreme Court, County of New York, without opposition[2]. The Honorable Jane Solomon is yet to rule on the said Velez' Motion to Stay. ***See Exhibit 4.***

Although, Velez Motion to Stay is still pending before Honorable Jane Solomon and *without withdrawing* the FINRA Arbitration, Capra and Pristine Capital ("Capra/Pristine Capital") have filed this instant Notice of Removal (the "Removal Notice") with this Court seeking to remove the Velez' pending Motion to Stay to this Court.

---

[1] *In or about 2007, the regulatory arm of the New York Stock Exchange, Inc. merged with the National Association of Securities Dealers Regulation, Inc. (NASD Regulation) and formed the Financial Industry Regulatory Authority or FINRA. FINRA operates the FINRA Dispute Resolution Inc., which arbitrates disputes between for its broker-dealer members and associated persons.*

[2] *It is not clear whether Velez' Motion to Stay was submitted without opposition because of the Removal Notice or because of failure on the part of Capra and Pristine Capital to timely file answers*

In order to get a foothold in the federal court, the Removal Notice has sought to make a federal case by attempting to create a federal subject matter jurisdiction and diversity of citizenship where none exists.

In their Notice of Removal, Memoranda of Law and accompanying Form of Order, Capra and Pristine Capital appear to be adopting a scatter-shot posture by (1) removing the lawsuit to federal court and (2) asking the federal court to compel FINRA to arbitrate the alleged dispute.

Although this proceeding should focus on the narrow procedural question as to whether a federal court should intervene in a case pending before the New York State court, Capra and Pristine Capital appear to have gone into the substance of the case by arguing in their Memorandum of Law that the federal court should compel Velez to arbitrate on the grounds that Velez had agreed to arbitrate. We disagree.

Having raised this argument, Velez must respond. There is no agreement between Velez and Capra/Pristine Capital to arbitrate. We agree that Velez executed a Form U-4 in 2001 in which he agreed to arbitrate disputes. However, the 2001 Form U-4 executed by Velez and cited by Capra/Pristine Capital in pages 3 through 6 of their Memorandum of Law was superseded and therefore rendered null and void or inoperative by the filing of the Form U-5 for Velez by Pristine Securities in February 2007.[3] ***See Exhibit 5.***

In their Memorandum of Law[4], Capra/Pristine Capital have cleverly avoided the effect of the February 2007 Form U-5. The question Capra/Pristine Capital must answer before the

---

[3] *Please see Velez Memorandum of Law submitted as part of Velez Motion to Stay per Exhibit 3 above.*

[4] *Capra and Pristine Capital have also alleged in page 5 of their Memorandum of Law that Velez was under investigation back in November 2006 for, among other things, theft of corporate funds. They also allege that Velez was repaying them the stolen monies while he was still employed by them. If it is really true that they had uncovered $250,000.00 stolen by Velez in November 2006, the question is: why did they not disclose the theft in the Form U-5 they filed for Velez in February 2007? The Court should note that the Form U-5 filed by Pristine Securities in February 2007 (almost 4 months after the alleged theft was uncovered) to terminate Velez association was a "clean" Form U-5. It had absolutely no disclosure that Velez was terminated for cause or that he was under investigation, let alone for stealing $250,000.00. Velez will prove in the appropriate forum that all these allegations of theft and other misconducts is just another*

3

Court is: If the Form U-5 did not have the effect of terminating Velez' prior agreement to arbitrate, why then was Pristine Securities[5] (as late as August 2007) demanding that Velez execute and submit another Form U-4? ***See Exhibit 6.***

We submit to this Court that the reason is very simple: the 2001 Form U-4 was rendered inoperative by the February 2007 Form U-5; consequently, and upon realizing that there was no current Form U-4 agreement on file to compel Velez to arbitrate, Pristine Securities had to demand that Velez execute a new Form U-4 which Velez refuses to sign[6].

Furthermore, we submit to this Court that arbitrations are simply a matter of common law contract. If a party refuses to sign an agreement to arbitrate, he/she may not be compelled to arbitrate because there is no meeting of the minds[7]. ***See Velez Motion to Stay per Exhibit 3 supra.***

---

*"train wreck" to borrow from Judge William Pauley III artful description. Velez will also prove in the appropriate forum that the allegations are nothing other than vendetta by Capra and Pristine Capital against Velez for launching Velez Capital Management. Because it was not until Velez launched Velez Capital Management in March 2007 that all these allegations about misconduct, including subsequent amendment of Velez' Form-5 started to be bandied around.*

[5] *Velez respectfully asks the Court to note that the Form U-4 he was being asked to sign as late as August 2007 shows him (Velez) as President even though he had left the firm months almost 6 months earlier.*

[6] *Velez is not opposed to having this matter litigated. However, the matter must be litigated in a court of competent jurisdiction with all the panoply of legal and evidentiary protections, not in an arbitration forum where Velez has not consented to arbitrate.*

[7] *This entire controversy ignores basic hornbook contract law. To put it another way, here is probably a fact pattern that may illustrate what happened: A and B were in business together. While in business, A and B agreed to have their disputes resolved before a Village Justice of Peace. They keep a copy of the agreement with them and file the original with the Justice of Peace. The agreement also requires that A and B update the agreement by notifying the Justice of Peace of certain incidents. Years later, A decides to move on. A and B tear up the agreement. They do so by notifying the Justice of Peace who maintains the original agreement. The Justice of Peace, upon receiving the termination notice, discards his own copy of the agreement. After A left and started his own business, B suddenly "discovers" that A had stolen from their business. Upon "discovering" the theft, B goes back to the Justice of Peace and attempts to amend the file to disclose the theft that he had discovered, but could not because the Justice of Peace had long discarded his own copy of the agreement. Having failed, B contacts A demanding that A sign another agreement and A resists. B then decides to file a complaint against A for the alleged stolen funds before the same Justice of Peace (who by the way, had already discarded his own copy of the agreement) and naturally A resists on the grounds that their earlier agreement to appear before the Justice of Peace had been terminated..*

Even FINRA understood that the filing of the Form U-5 abrogated and/or superseded the operation of the prior Form U-4, because the Form U-5, by abrogating Velez' prior consent to arbitrate, created a deficiency in FINRA's Central Registration Depositary ("FINRA/CRD").

It was precisely because the Form U-5 created a deficiency in FINRA/CRD and therefore rendered null and void Velez' earlier consent to arbitrate that Pristine Securities demanded that Velez sign another Form U-4.[8] *See Exhibit 6 supra.*

Capra and Pristine Capital have their cake and eat it too. They created their current legal quagmire by initially filing a Form U-5 for Velez. And realizing that they have dug themselves a legal abyss in which they are having difficulties climbing out of, they are now taking the incredulously unprecedented step of invoking a federal jurisdiction into what is essentially a common law contract dispute between the litigants.

Finally, the FINRA's "website" cited Capra/Pristine Capital as defining "associated persons" to include "persons formally associated with a member" is misleading. The term "associated persons" includes "persons formally associated with a member" only for purposes of FINRA *initiated* enforcement proceedings and investigations. It does *not* apply to FINRA's Code of Arbitration, but to FINRA's Code of Procedures - which governs FINRA *initiated* enforcement proceedings and investigations[9]. That is precisely why "persons formally associated with a member" are not included in the category of persons who must arbitrate in FINRA's Code of Arbitration. FINRA's Code of

---

[8] *Under Article 4, Section 1(c) of FINRA's By-Laws and FINRA's Conduct Rule 3070, a broker-dealer can always log onto FINRA/CRD and amend an employee's Form U-4 to disclose reportable events. When Capra and Pristine Capital contrived these charges of alleged theft and other misconduct against Velez (months after Velez had left them to launch his own firm) and sought to amend Velez' Form U-4, they discovered to their dismay that there was no Form U-4 for Velez in FINRA's Central Registration Depositary, because Velez' 2001 Form U-4 (on which they rely to argue that Velez must be compelled to arbitrate in their Memorandum of Law) was terminated and purged out of FINRA/CRD files when Pristine Securities filed the February 2007 Form U-5 for Velez. That is why they have demanded that Velez sign a new Form U-4. This also supports Velez' position that his consent to arbitrate has long been terminated.*

[9] *FINRA does not even have unlimited jurisdiction over a person who was formerly associated with a FINRA member firm. Under Article 4, Section 6 of FINRA's By-Laws, FINRA's ability to a pursue FINRA's initiated complaint or investigation (not a third party initiated arbitration) against a former associated person runs out after two years from the date such person's association was terminated.*

5

Arbitration (cited by Capra and Pristine Capital in their Memorandum of Law) clearly does *not* include "persons formally associated with a member" in the category of persons who must be compelled to arbitrate because FINRA rules recognize that FINRA simply cannot force a person whose association with a FINRA member firm has been terminated by filing of a Form U-5 to arbitrate. ***Please see and compare pages 4 and 13 of Capra/Pristine Capital Memorandum of Law.***

ARGUMENT
SUMMARY OF THE LEGAL ARGUMENT

This lawsuit does not belong in federal court. The Arbitration Complaint filed by Capra and Pristine Capital and Velez' Motion to Stay does not allege any federal cause of action, a requirement that must be met under the "Well-Pled Complaint Rule" to invoke federal jurisdiction. Moreover, and as we shall prove in this Memorandum of Law, there is no diversity of citizenship to invoke federal intervention. Capra and Pristine Capital have alleged in their Notice of Removal that they are both Florida residents. This is simply disingenuous and a clever attempt to invoke federal jurisdiction. Their assertion of Florida residency is contradicted *not only* by the evidence but by their own filings in their withdrawn federal lawsuit *and* their Arbitration Complaint.

Pristine Capital conducts business in the State of New York and as such is subject to New York court's jurisdiction under NY CPLR §302. Pristine Capital's presence in New York is supported by Capra and Pristine Capital's own Arbitration Complaint in which they state that Pristine Capital has its principal place of business in New York. It is also contradicted by Pristine Capital's withdrawn federal lawsuit in which it (Pristine Capital) clearly asserted that its principal place of business is in White Plains, New York. Capra, on the other hand, is the President and CEO of Pristine Capital – a company that conducts business in the State of New York. Capra therefore conducts business in the State of New York via Pristine Capital and as such comes under the *in personam* jurisdiction of the courts of New York.

6

Capra and Pristine Capital knew all the facts about the absence of federal subject matter jurisdiction and diversity of citizenship and have chosen to delay this litigation by removing it to the federal court. The crux of their argument that Velez should be compelled to arbitrate because he signed an agreement to arbitrate could have been made in New York state court without resorting to the federal court. However, Velez submits that the right of the arbitrators to decide "procedural" issues argued by Capra and Pristine Capital in their Memorandum of Law of Law is still *non sequitur,* if as Velez argues, there is no underlying agreement to arbitrate[10].

THE LEGAL STANDARD FOR REMOVAL

The hornbook law is that an action is removable to a federal court only if that action could have been brought in the federal court in the first instance under 28 USC § 1441(a). A bedrock rule of this jurisprudence is that federal courts are courts of limited jurisdiction and those who seek to invoke federal court jurisdiction must clearly demonstrate that jurisdiction exists. *Marcella v. Capital District Physicians Health Care, Inc.,* 295 F.3d 42 (2d Cir 2002).

The burden of establishing jurisdiction of 28 USC §1441 is on the party seeking removal. *Chille v. United Airlines,* 304 F.Supp.2d 466, 469 (W.D.N.Y. 2004), quoting, *Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir. 1998) ("It is also hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.") Because the exercise of removal jurisdiction ousts a state court of jurisdiction, "due regard for the rightful independence of state governments require that [federal courts] confine their own jurisdiction to the precise limits which the [removal] statute has defined." *Shamrock Oil & Gas Corp. v. Sheets,* 313 US 100, 108-109 (1941). The mandate that a federal court precisely exercise its jurisdiction requires that it strictly construe the removal statute and resolve all doubts against removability. *Lupo v. Human Affairs International, Inc.,* 28 F.3d 269, 274 (2d Cir. 1994), quoting *Somlyo v. J. Lu-Rob*

---

[10] *Velez does not believe that the threshold issue of whether a contract exists to compel him to arbitration is a "procedural" question that should be left to the arbitrators to determine. If Velez were to deem the issue as a routine "procedural" matter and submit the issue to the arbitrators, then Velez would be deemed to have participated in the arbitration and as a result, forfeit his right to apply for a stay of the arbitration under NYCPLR §7503(b) and (c).*

*Enters., Inc.,* 932 F.2d 1043, 1045-46 (2d Cir. 1991).

Significantly, and to be heard in a federal court, the cause of action must necessarily arise under the Constitution, laws and treaties of the United States as mandated by 28 USC §1331. The federal trial court must be certain of its jurisdiction before it embarks upon a safari in search of a judgment on the merits.[11] *Alessi v. Beracha, D.Del.2003, 244*

---

[11] *Statute allowing for removal should be construed narrowly, with doubt construed against removal. Diaz v. Sheppard, C.A.11 (Fla.) 1996, 85 F.3d 1502, rehearing denied, rehearing and suggestion for rehearing en banc denied 99 F.3d 1157, certiorari denied 117 S.Ct. 1349, 520 U.S. 1162, 137 L.Ed.2d 506; Court of Appeals strictly construes removal statute against removal jurisdiction. Boggs v. Lewis, C.A.9 (Mont.) 1988, 863 F.2d 662; Because lack of jurisdiction would make any decree in case void and continuation of litigation in federal court futile, removal statute [28USC §1441] should be strictly construed and all doubts resolved in favor of remand. Abels v. State Farm Fire & Cas. Co., C.A.3 (Pa.) 1985, 770 F.2d 26; This section should be construed narrowly and against removal. People of State of Ill. v. Kerr-McGee Chemical Corp., C.A.7 (Ill.) 1982, 677 F.2d 571, certiorari denied 103 S.Ct. 469, 459 U.S. 1049, 74 L.Ed.2d 618; Subsec. (a) of this section relating to removal of causes providing that civil action of which district court has original jurisdiction is removable by defendants except as otherwise provided, must be read together with subsec. (b) of this section providing that any action except those founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought. Monroe v. United Carbon Co., C.A.5 (La.) 1952, 196 F.2d 455; The removal statute must be construed narrowly, and all doubts should be resolved in favor of remand. In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation, E.D.Pa.2004, 352 F.Supp.2d 533; Removal jurisdiction should be strictly construed because of significant federalism concerns that it raises; for this reason, federal courts must resolve any doubts regarding federal jurisdiction in favor of remanding to state court. Hannibal v. Federal Express Corp., E.D.Va.2003, 266 F.Supp.2d 466; Court must strictly construe the federal removal statute. Russell v. Sprint Corp., D.Kan.2003, 264 F.Supp.2d 955; Statutory provisions permitting removal must be strictly applied, and federal jurisdiction over such claims should not spill beyond these statutory boundaries. Howard v. Food Lion, Inc., M.D.N.C.2002, 232 F.Supp.2d 585; In reviewing motion to remand, courts strictly construe removal statute and resolve all doubts in favor of remanding case to state court. Richardson v. Phillip Morris Inc., D.Md.1997, 950 F.Supp. 700; Removal statutes are narrowly construed. Giddens v. Hometown Financial Services, M.D.Ala.1996, 938 F.Supp. 801; Removal of civil cases to federal court is infringement on state sovereignty, and statutory provisions regulating removal thus must be strictly applied; federal court should not extend its jurisdiction beyond boundaries drawn by those provisions. Freeman v. Bechtel, M.D.N.C.1996, 936 F.Supp. 320; Removal statute is to be strictly construed, and any doubts concerning removal must be resolved against removal and in favor of remanding case to state court. Ta v. Neimes, W.D.Tex. 1996, 927 F.Supp. 977, appeal after remand from federal court 985 S.W.2d 132, rehearing overruled, review dismissed by agreement; Federal court's removal jurisdiction is statutory in nature and is to be strictly construed; any doubts would be resolved in favor of remand. Flores v. Long, D.N.M. 1995, 926 F.Supp. 166, appeal dismissed 110 F.3d 730; Removal statute is to be construed narrowly and, therefore, against removal. Emerson Power Transmission Corp. v. Roller Bearing Co. of America, Inc., N.D.Ind.1996, 922 F.Supp. 1306; Congressional acts regulating jurisdiction of federal courts, including removal statute, are subject to strict construction by courts. Sirois v. Business Exp., Inc., D.N.H. 1995, 906 F.Supp. 722; Courts should interpret removal statute narrowly and presume that plaintiff may choose his or her forum; any doubt regarding jurisdiction should be resolved in favor of states. Kenro, Inc. v. Fax Daily, Inc., S.D.Ind.1995, 904 F.Supp. 912, reconsideration denied 962 F.Supp. 1162; District courts must strictly construe removal statutes. Moore v. Mobil Oil Corp., E.D.Tex.1995, 904 F.Supp. 587; District court's removal jurisdiction must be strictly construed. Iowa Comprehensive Petroleum Underground Storage Tank Fun Bd. 990C80656 v. Amoco Oil Co., N.D.Iowa 1995, 883 F.Supp. 403.*

8

*F.Supp.2d 354, on remand 849 A.2d 939.*

It was therefore improper for Capra and Pristine Capital to remove this action to the Federal Court from New York State Court since, as we shall prove later in this submission, there is no federal subject matter at issue and/or diversity of citizenship.

POINT 1 - THERE IS ABSENCE OF FEDERAL SUBJECT MATTER JURISDICTION

It is hornbook law that federal jurisdiction under 28 USC §1331 exists only if a federal question appears on the face of the plaintiff's "well-pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). This means, among other things, that the plaintiff[12] is "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

In order for the action to be removable, the federal question must be clearly evident on face of the complaint, not merely in the defendant's answer or notice of removal. *Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S.,* 1, 9-11 (1983); *Committee of Interns and Residents v. New York State Labor Relations Board,* 420 F. Supp. 826, 831 (S.D.N.Y. 1976). Thus, with but few exceptions, a federal defense will not give rise to federal jurisdiction. *Smith v. Dunham Bush, Inc.,* 959 F.2d 6, 8 (2d Cir. 1992).

In their moving papers, Capra and Pristine Capital have cited Section 27 of the Exchange Act, 15 USC §78aa, as a basis to invoke federal jurisdiction. However, consistent with *Franchise Tax Bd.* and *Committee of Interns and Residents, Id.,* the Court may not grant a

---

[12] *Capra and Pristine Capital are the Plaintiffs in the FINRA Arbitration. Velez is the Plaintiff/Petitioner in the Motion to Stay. There is no federal claim in both actions. Therefore under Caterpillar, Inc. and Franchise Tax Board, this matter should not have been removed. Additionally, to the extent that Capra and Pristine Capital have (1) removed this matter to the federal court in order(2) to seek a federal court Order to compel FINRA to proceed with the arbitration, the removal is also procedurally flawed for the following reasons: (a) 28 USC 1441 permits only a defendant (not a plaintiff) to remove, but Capra and Pristine Capital have removed this matter even though they are the Plaintiffs in the FINRA Arbitration, and (b) 28 USC 1441(a) provides for removal from a state court to a federal court (not from a FINRA Arbitration Forum or any other arbitration forum to a federal court and (3) case law requires that the removal statute be construed narrowly such that a matter may not be removed from an arbitration forum to a federal court. It is precisely for these procedural flaws that this Memorandum of Law also argues for a Dismissal of the Notice of Removal.*

removal simply based on a defendant's answer or notice of removal.

There is no federal question to support Capra/Pristine Capital's rush to the federal court. Neither the Statement of Claim in the Arbitration Complaint *(Exhibit 2 supra)* nor Velez' Motion to Stay *(Exhibit 3 supra)* contains a scintilla of a federal cause of action.

Finally, and because Arbitration Complaint and Velez' Motion to Stay stakes out only state or common law based complaints, the district court has the discretion under 28 USC §1441(c) to remand to state court *"all matters in which state law predominates." Emphasis added.*

POINT II - THERE IS A COMPLETE ABSENCE OF DIVERSITY OF CITIZENSHIP

Since there is no federal subject matter jurisdiction, we must now focus on whether diversity of citizenship exists to warrant federal intervention.

28 USC §1441(b) provides as follows:
(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the constitution, treaties, or laws of the United States shall be removable without regard to citizenship or residence of the parties. *Any other action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which the action is brought. (Emphasis added.)*

On the face of it, and as we shall prove later in this submission, the removal is improper because both Capra and Pristine Capital are either New York residents or persons who conduct business in the State of New York; therefore they are both subject to New York's *in personam* jurisdiction under NY CPLR § 302.

In their moving papers, Capra and Pristine Capital invoke federal jurisdiction by asserting that Pristine Capital has its principal place of business at 2333 Brickell Avenue; SuiteUL7, Miami, FL 33129 and incorporated in the State of Delaware; and that Greg Capra is a resident of Florida. *(Please see page 1, items #2 and #3 of the Notice of Removal – Exhibit 4 supra)***:**

We disagree for the following reasons:

i.     The assertion that Pristine Capital has its principal place of business in Florida is contradicted by Capra's and Pristine Capital's own Statement of Claim in the Arbitration Complaint. Page 1, par. 2 of their Arbitration Complaint *(Exhibit 2 supra)* states as follows:

> "Plaintiff PCH (i.e., Pristine Capital) is a Delaware corporation with its *principal place of business located at 7-11 Broadway, Suite 210, White Plains, New York 10601……"* Emphasis added.

ii.     Additionally, page 1, par. 1 of Pristine Capital's withdrawn June 2007 federal complaint *(Exhibit 1 supra)* states as follows:

> "Plaintiff Pristine Capital Holdings Inc. ("PCH") is a Delaware corporation with *its principal place of business located at 7-11 Broadway, Suite 210, White Plains, New York 10601…."* Emphasis added.

We believe that their assertions in the Arbitration Complaint *and* in the June 2007 federal suit (albeit withdrawn) that Pristine Capital's principal place of business is in New York are true and that their contrary claim that Florida is Pristine Capital's principal place of business is a misleading afterthought which Velez respectfully asks the Court to reject.

Our position is also supported by the records of the New York State Department of State Division of Corporation's Database which clearly shows that Pristine Capital is an active corporation with is principal place of business located at 7-11 South Broadway, Suite 210, White Plains, NY 10601. ***See Exhibit 7.***

As to Capra, page 1, par. 1 of the Arbitration Complaint states as follows:

> "Plaintiff Greg Capra is one of the co-founders of Pristine Capital Holdings, Inc. ("PCH"), as well as a forty-seven percent shareholder. *He is currently PCH's President and CEO....*" *Emphasis added.*

New York law grants the courts of the State of New York *in personam* jurisdiction over Capra because Capra conducts business in the State of New York by virtue of his position as the President and CEO of Pristine Capital – a company that has its principal place of business located at 7-11 Broadway, Suite 210A, in White Plains, New York.

§302(a)(1) of NYCPLR states as follows:

> (a) *Acts are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over a nondomiciliary, or his executor or administrator, who in person or through an agent: *Emphasis added*
>
> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state.

Since it is not disputed by Capra and Pristine Capital that (1) Pristine Capital has a principal place of business in New York and that (2) Capra conducts business in the State of New York in his capacity as President and CEO of Pristine Capital, therefore, there is no diversity of citizenship to warrant removal to the federal court.

Federal courts' decisions have been uniform in insisting that complete diversity must exists among defendants to afford a defendant the right to remove.

In *Young & Simon, Inc. v. Bernsetein,* 486 F.Supp. 1012 (D.Maryland 1979), the Court found that "...By way of contrast removability under section 1441(b), unlike subject matter jurisdiction, is made by that section to turn upon the residency or non-residency of

the defendant or defendants *and where any defendant is a resident of the state in which the action has been brought, that action may not be removed by that defendant or by any of the defendants to a federal court under section 1441(b)" Emphasis added.* 486 F.Supp 1012 at 1014. The court granted plaintiffs motion to remand the action back to state court.

In *Auto Ins. Agency, Inc. v. Interstate Agency, Inc.,* 525 F.Supp 1104 (D.South Carolina 1981) the Court found that diversity of citizenship and the amount in controversy were the only basis for original jurisdiction in federal court. The Court notes that federal courts are courts of limited jurisdiction and that these limitations must be strictly construed in favor of the state courts. The Court went on to cite *Penn Securities, Co. v. Home Indemnity Co.,* 418 F.Supp 292,294 (1976) to confirm the basic premises of law that there is a strong policy of restricting the jurisdiction of federal courts in favor of non-removal. The Court states, based upon *Spring Wire Corp. v. American Guarantee & Liability Ins. Co.,* 220 F.Supp 222, (1963) that Statutes which provide for removal on the basis of diversity of citizenship are to be strictly construed in favor of the jurisdiction of the state court.

*In Midwestern Distribution, Inc. v. Paris Motor Freight Lines, Inc.,* 563 F.Supp 489 (1983) the court on page 491 states, "Thus, where subject matter jurisdiction is based solely on diversity, the case may be properly removed only if none of the defendants is a citizen of the forum state." See, *Thornton v. Allstate Insurance Co.,* 492 F.Supp 645, 648 (E.D. Mich. 1980); *First National Bank In Little Rock v. Johnson,* 455 F.Supp 361, 363 (1978); *American Oil Co. v. Egan,* 357 F.Supp 610, 613 (D.Minn 1973).

We do not concede that Capra is not a New York person subject to New York's *in personam* jurisdiction. However, even assuming *arguendo* that Capra is not subject to New York's *in personam* jurisdiction, this matter is still not removable because Pristine Capital is a resident of New York. Therefore there is no complete diversity among the defendants.

POINT III - VELEZ IS ENTITLED TO LEGAL FEES AND COSTS

Capra and Pristine Capital know that there is no federal subject matter in this litigation. Moreover, they know that there is no diversity of citizenship. In fact, their claim for diversity of citizenship is *contradicted* by their own prior filings in their withdrawn federal lawsuit *and by* their Arbitration Complaint. In both filings, they state very clearly that (1) Pristine Capital has its principal place of business in White Plains, New York and that (2) Capra is the President and CEO of Pristine Capital – which has its principal place of business in New York.

Capra and Pristine Capital's intentional ignoring and disregard of the above facts and the applicable law constitutes a basis for Velez' claim for attorney's fees and costs and expenses. Under 28 USC §1447(c), where a removed case is remanded the court *"may require payment of just costs and any actual expenses, including attorney fees, incurred as the result of the removal."* Emphasis added. The award of costs is provided for under statute and is within the discretion of this Court. *See, Morgan Guaranty Trust Company of New York v. Republic of Palau*, 971 F.2d 917 (2d Cir. 1992). A court in the exercise of its discretion need not require a finding of bad faith or frivolity on the part of the removing defendant in order to award costs to the remanding plaintiff. *Shepis v. Local Union No. 17, United Carpenters and Joiners of America*, 989 F. Supp. 511,518(S.D.N.Y. 1998). *Please see Attorney's Affirmation in support of claim for attorney's fees and costs per* **Exhibit 8.**

The rationale for providing for costs in the statute is that the *exparte* simplicity for a party to remove a case from state court to federal court can also expose a plaintiff to the possibility of abuse, unnecessary expense and harassment if a defendant improperly removes a lawsuit. *Wilds v. United Parcel Service, Inc.*, 262 F. Supp. 2d at 184. If such an improvident removal occurs the plaintiff would then have to appear in federal court, prepare motion papers and litigate, merely to get the action returned to the court where the plaintiff initiated it. *Wilds v. United Parcel Service, Inc.*, 262 F. Supp. 2d at 184.

In this case, Velez filed an Article 75 Petition which by its very nature is an expedited proceeding. Velez received Capra/Pristine Capital's Notice of Removal shortly before Velez' Petition was to be heard in Supreme Court of the State of New York for the County of New York before the Honorable Jane Solomon.

New York's CPLR Article 75 Proceeding is a Special Proceeding and under CPLR §410, Velez was entitled to a speedy hearing. Instead, because of Capra/Pristine Capital's improvident removal, Velez has suffered both the delay of having the proper New York Supreme Court resolve rule on his Petition as well as having to incur costs from litigating in federal court to rightfully return this action to state court. Under these circumstances, Velez should recover his actual costs from Capra and Pristine Capital for successfully bringing a remand motion. *See, Shamoun v. Peerless Importers, Inc.*, 2003 U.S. Dist. LEXIS 13376 (E.D.N.Y. 2003); *In re: Lawrence*, 233 B.R. 248; 1999 U.S. Dist. LEXIS 6321 (N.D.N.Y. 1999); *Thompson v. Williams*, 1998 U.S. Dist. LEXIS 20172 (E.D.N.Y. 1998); *Shepis v. Local Union No. 17, United Carpenters and Joiners of America*, 989 F. Supp. 511 (S.D.N.Y. 1998).

Based on the foregoing, the instant case was clearly non-removable. Capra and Pristine should be required to pay Velez fees and costs.

POINT IV – CONCLUSION

It is clear from the foregoing that there is no federal subject matter at issue in this litigation. Neither the Arbitration Complaint nor Velez Motion to Stay contains any colorable federal claim. In addition, there is no diversity of citizenship, because Pristine Capital has its principal place of business in White Plains, New York and Capra, [Pristine Capital's] President and CEO conducts business in New York through Pristine Capital. Therefore, this matter should be remanded to the New York state court and Capra and Pristine Capital should be ordered to reimburse Velez for attorney fees and costs and the Notice of Removal should be dismissed.

Respectfully submitted this 16th day of November 2007:


_____S/S\_\_\_\_\_
Franklin I. Ogele, Esq. (FO-oo40)
Attorney for Oliver Velez
One  Gateway Center, Suite 2600
Newark, NJ 07102
Cell Ph. 973 277 4239 / Office Ph. 973 645 0565
Fax 973 923 7890

VELEZREMOVALANS1