**ORDERED** that Defendants Velez Capital Management LLC ("VCM"), Oliver Velez, Paul Lange, SaulOrtiz-Stevens, and Stephen Cina are:

1. Temporarily enjoined and will immediate cease and desist from using materials obtained from PCH, including but not limited to materials taken from "The Pristine Method®" manual, and from using the "Trade for Life" manual, including any excerpts or materials therefrom at the San Diego Traders Expo during the period June 20, 21, 22, and 23, 2007;

2. Temporarily enjoined and will immediately Cease and Desist from copying and plagiarizing Plaintiffs' copyrighted and trademarked material, and registered service marks, including but not limited to The Pristine Method®;

3. Temporarily enjoined and will immediately Cease and Desist from copying and plagiarizing materials copyrighted and trademarked by Plaintiffs and presenting them to the public as "Trade for Life" byVelez Capital Management;

4. Temporarily enjoined and will immediately Cease and Desist from hiring Plaintiff's employees in breach of their employment agreements with PCH;

5. Temporarily enjoined and will immediately Cease and Desist from breaching the employment agreements of Defendants Paul Lange, Saul Ortiz-Stevens, and Stephen Cina, which contain restrictive covenants at Paragraphs "3", "4", "5", and "6" forbidding the Defendants from competing with Plaintiff for one year after their employment terminates with PCH; from soliciting Plaintiff's customers or employees for one year after their employment terminates with PCH; and from ever disclosing the Confidential Information of PCH;

6.. Temporarily enjoined and will immediately Cease and Desist from presenting to current and future customers "The Pristine Method®" and other registered and trademarked materials;

7. To immediately provide an accounting of all revenues of VCM to date, broken down by product category;

8. To immediately disgorge all salaries and profits paid since the inception of VCM, and all defendants to return all PCH materials removed during the period of Defendants' employment,

and to identify and/or erase and return as applicable, all electronic records taken from PCH during the period of Defendants' employment;

9. Temporarily enjoined and will immediately cease and desist from interfering with the business relationship between PCH and Traders Library, and from directing Traders Library not to withhold the publishing and distribute for sale of any PCH materials;

10. That a true copy of the within Order to Show Cause, together with the supporting papers upon which it is made and the Complaint, shall be served via facsimile, overnight mail or hand delivery within 24 business hours, and that said service shall constitute due and proper service under our Court Rules and Statutes;

11. That Defendants shall serve and file responsive papers to the within Order to Show Cause upon Plaintiffs' counsel and each other no later than June _____, 2007;

12. That Plaintiffs shall serve and file any and all additional documents and certifications in support of the within application no later than _____ days before said return date;

13. That Plaintiffs be permitted limited expedited discovery With responses from Defendants to written discovery requests within seven days of receipt thereof;

14. That defendant be ordered to appear for depositions within ten days from the date of service of notices thereof; and

15. That Plaintiff be permitted limited third-party discovery of the common publisher of PCH and VCM publications, "Traders Library".

That Defendants show cause before the Hon. _____., United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York on the ____ day of June, 200 at __:00 o'clock in the forenoon or as soon thereafter as counsel may be heard why an order should not be entered:

1. Directing all Defendants not to use materials obtained from PCH, including but not limited to materials taken from "The Pristine Method®" manual, and from using the "Trade for Life" manual, including any excerpts or materials therefrom, at the San

3

Diego Traders Expo during the period June 20, 21, 22, and 23, 2007;

2. Directing all Defendants to immediately Cease and Desist from copying and plagiarizing Plaintiffs' copyrighted and trademarked material, and registered service marks, including but not limited to The Pristine Method®;

3. Directing all Defendants to immediately Cease and Desist from copying and plagiarizing materials copyrighted and trademarked by Plaintiffs and presenting them to the public as "Trade for Life" by Velez Capital Management;

4. Directing all Defendants to immediately Cease and Desist from hiring Plaintiffs' employees in breach of their employment agreements with PCH;

5. Directing all Defendants to immediately Cease and Desist from breaching the employment agreements of Defendants Paul Lange, Saul Ortiz-Stevens, and Stephen Cina, which contain restrictive covenants at Paragraphs "3", "4", "5", and "6" forbidding the Defendants from competing with Plaintiff for one year after their employment terminates with PCH; from soliciting Plaintiff's customers or employees for one year after their employment terminates with PCH; and from ever disclosing the Confidential Information of PCH.

6. Directing all Defendants to immediately Cease and Desist from presenting to current and future customers "The Pristine Method®" and other registered and trademarked materials;

7. Directing Velez and VCM to provide an accounting of all revenues of VCM to date, broken down by product category;

8. Directing Velez and VCM to disgorge all salaries and profits, and all defendants to return all PCH materials removed during the period of Defendants' employment, and to identify and erase and/or return as applicable, all electronic records taken from PCH during the period of Defendants' employment;.

9. Directing Velez and VCM cease and desist from interfering with the business relationship between PCH and Traders Library, and from directing Traders Library not to withhold the publishing and distribute for sale of any PCH materials.

10. That a true copy of the within Order to Show Cause, together with the supporting papers upon which it is made and the Complaint, shall be served via facsimile, overnight mail or hand delivery within 24 business hours, and that said service shall constitute due and proper service under our Court Rules and Statutes.

11. That Defendants shall serve and file responsive papers to the within Order to Show Cause upon Plaintiffs' counsel and each other no later than June _____, 2007, and

12. That Plaintiffs shall serve and file any and all additional documents and certifications in support of the within application no later than _____ days before said return date.

13. That Plaintiffs be permitted limited expedited discovery with responses from Defendants to written discovery requests within seven days of receipt thereof;

14. That defendant be ordered to appear for depositions within ten days from the date of service of notices thereof; and

15. That Plaintiff be permitted limited third-party discovery of the common publisher of PCH and VCM publications, "Traders Library".

**ORDERED**, that plaintiff is guaranteed leave to conduct and serve expedited discovery, including, but not limited, Request for Production of Documents, Interrogatories, and the depositions of Defendants Oliver Velez, Paul Lange, Saul Ortiz-Stevens, and Stephen Cina., prior to the return date of this Order to Show Cause. Any such document request, interrogatories and deposition requests shall be on three (3) days notice; and it is further

**ORDERED**, that plaintiff is granted leave to conduct and serve expedited discovery, including, but not limited to, Request for Production of Documents, Interrogatories, and the depositions of all defendants and employee of VCM prior to the

5

return date of this Order to Show Cause. Any such document request, interrogatories and deposition requests shall be on three (3) days notice; and it is further

**ORDERED**, that defendants shall serve and file their Answer to the Verified Complaint upon attorneys for plaintiff, Dan A. Druz, 291 E. Main St., Suite 1000, Manasquan, NJ 08736, within twenty (20) days from the date of service of the Verified Complaint and that if defendants shall fail to so file and serve their Answer, judgment by default will be rendered against them for the relief demanded in the Verified Complaint; and it is further

**ORDERED**, that defendants' answering briefs, affidavits and/or certifications in opposition to plaintiff's Order to Show why a preliminary injunction should not issue, shall be served by _____ upon plaintiff's counsel, on or before _____, 2007; and it is further

**ORDERED**, that plaintiff's reply brief, affidavits and/or certifications, if any, shall be served upon defendants and the Court no later than on _____, 2007; and it is further

**ORDERED,** that copies of this Order and Plaintiff's Memorandum of Law in Support of Its Application for Injunctive Relief and for Expedited Discovery shall be served upon defendants by overnight mail.

_____
U.S.D.J.



**LILLING & LILLING, PLLC**
Patent & Trademark Law

55 Church St.
Suite 207
White Plains, NY 10601

Tel: (914) 684-0600
Fax: (914) 684-0304
www.Lilling.com
E-Mail: Bruce@Lilling.com
Sean@Lilling.com

June 19, 2007

VIA FACSIMILE 212 805 6390
Hon. William H. Pauley III, USDJ
US Courthouse
United States District Court for Southern District of New York
500 Pearl Street
New York, NY

Re:  Pristine Capital Holdings, Inc. v. Velez Capital Management LLC *et al*
Docket No 07 cv 5720

Dear Hon. Judge Pauley,

    In preparation for today's conference at 5 pm, concerning Plaintiff's request for a TRO, we wish to present these brief preliminary points for the court's consideration. At this juncture we are appearing on behalf of only the Defendants Velez Capital Management LLC and Oliver Velez. As best as we are informed, the other 3 individual defendants have not yet been served.

    There is no jurisdiction and, therefore, the case in its entirety should be dismissed and attorneys' fees should be awarded.

    Paragraph 40 is the only portion of the Complaint that purports to set forth a federal claim, but this paragraph is vague and does not set forth a *prima facia* case of any violation of any federal right.

    While Plaintiff seems to allege that it owns the trademark The Pristine Method, it does not anywhere allege that Defendants have used or even intend to use this or any of Plaintiff's other marks. In fact, Exhibit 4 to the Affidavit of Ronald Wagner shows that Defendant is using the mark "Trade for Life™" and the corporate name Velez Capital Management, LLC appears thereon. (In point of fact Defendant has never used the mark The Pristine Method and has no intension to ever do so.)

    By statute to make out a claim for trademark infringement the accused defendant must "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive," 15 USCA 1114(1)(a), but Plaintiff never alleges any "use" by Defendants and in fact its own exhibits show that

**LILLING & LILLING, PLLC**

there is no such use! See *Shiraz University School of Medicine Alumni Association USA, Inc. v. Sheik*, 1999 WL 558139, *4 (S.D.N.Y.)

If this was not enough to throw out the claim, contrary to Plaintiff's counsel Dan Druz' affidavit, the trademark registrations are not owned by Plaintiff. As reflected by the copies provided by Plaintiff's counsel (exhibit 1 to his Affidavit), they are instead owned by Pristine Capital Management, Inc, which is an inactive company (according to the records of the New York State Department of State – Division of Corporations), which is not a party to this action. Moreover, the PTO does not show any assignments of any of the referenced trademarks to Plaintiff or to anyone else. They remain owned by an inactive, defunct company, that is not a party hereto.

Thus, as regards a purported trademark claim, there is an utter failure to even state a claim upon which relief can be granted, since there is not even an allegation of any infringing acts and the Plaintiff does not even own the trademarks!

Plaintiff's intent in Paragraph 40 seems to be for protection of some mostly un-identified materials – it there states "... The resources and methods are all subject to registered service, trademarks and copyrights. VCM and Velez, through repeated reference, and by cloning TPM® for his own use ..."

As best as can be understood, it seems that Plaintiff is alleging "copying" and "infringement" of the The Pristine Method manual and some other un-identified works. Nowhere, however, is there any reference to any certificate of copyright registration. (Moreover, today we electronically searched the records of the US Copyright Office, and there are no listings at all for Pristine Capital.) The law requires, however, as a perquisite of jurisdiction, that a copyright first be registered before there may be any complaint for copyright infringement. 17 USC 411. *Lapham v. Porach*, 2007 WL 1224924, *4 (SDNY). Further, this court has recognized that a copyright infringement claim is deficient if the copyright certificate from the Copyright Office is not attached to the Complaint. *Vargas v. Pfizer, Inc.*, 418 F. Supp 2d 369, 373 (S.D.N.Y. 2005)

In addition, the Copyright law preempts any other statute or law with respect to works that could be protected under the Copyright law. 17 USC 301. *Lapham v. Porach*, 2007 WL 1224924, *13 (SDNY). Common law copyright has not existed for over 30 years. Thus state claims can be preempted if they involve rights similar to those in the Copyright law, like for example the herein causes of action



**LILLING & LILLING, PLLC**

for conversion and unfair competition. See *Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.*, 373 F. 3d 296, 305-6 (2d Cir. 2005). *Integrative Nutrition, Inc. v. Academy Of Healing Nutrition*, 476 F. Supp. 291, 295-6 (S.D.N.Y. 2007)

Accordingly, there are no viable claims for infringement of any name or trademark and likewise no viable claim for copying or infringement of any manuals or printed materials and no claim for copyright infringement. Therefore, there is no claim for trademark or copyright infringement and hence no viable federal claim over which the court has jurisdiction.

The Second through Seventh causes of action are all state claims, but the federal court has no jurisdiction over state claims between residents of the same state unless they are included in an action involving viable federal claims over which the federal court has jurisdiction. *Milano v. The New York City Taxi And Limousine Commission*, 2007 WL 959295, *2 (S.D.N.Y.). Here there are no extent federal claims, so the "... Second Circuit has observed ... in the usual case in which all federal- law claims are eliminated ... the balance of factors ... point toward declining to exercise jurisdiction over the remaining state-law claims..." *Id.*

Moreover, as regards the individual defendants Paul Lange, Saul Ortiz-Stevens and Stephen Cina no federal claims are asserted and only state claims are asserted, so, as regards them, there does not appear to be any federal jurisdiction what so ever.

Hence, the court likewise has no jurisdiction to hear the state causes of action either.

Since the Plaintiff and its attorney have not properly asserted a viable federal claim over which the court has jurisdiction, have sloppily ignored the facts and their own exhibits and have failed to do even a minimal level of research to determine how to assert a viable claim, and have improperly burdened the court and defendants with an unnecessary and legally insufficient request for a TRO, Plaintiff should be ordered to reimburse Defendants for all of their attorneys fees incurred from June 15, 2007 through today's hearing.

Very truly yours

Bruce E. Lilling

Cc:   Plaintiff's counsel Dan R. Druz via facsimile 732 223 1592

Defendants Velez Capital Management LLC and Oliver Velez

```
                                                                    1
        76jzpri1
  1     UNITED STATES DISTRICT COURT
  1     SOUTHERN DISTRICT OF NEW YORK
  2     ------------------------------x
  2
  3     PRISTINE CAPITAL HOLDINGS,
  3     INC.,
  4
  4                 Plaintiff,
  5
  5          v.                              07 CV 5720 (WHP)
  6
  6     VELEZ CAPITAL MANAGEMENT, LLC,
  7     et al.,
  7
  8                 Defendants.
  8
  9     ------------------------------x
  9
 10                                          June 19, 2007
 10                                          5:30 p.m.
 11
 11     Before:
 12
 12                 HON. WILLIAM H. PAULEY III,
 13
 13                                          District Judge
 14
 14                       APPEARANCES
 15
 15     DAN A. DRUZ
 16          Attorney for Plaintiff
 16
 17
 17     LILLING & LILLING PLLC
 18          Attorneys for Defendants
 18     BY:  BRUCE E. LILLING
 19
 20
 21
 22
 23
 24
 25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                                    2
        76jzpri1
  1              THE COURT:  Good afternoon.  Please be seated.
  2              (Case called)
  3              THE DEPUTY CLERK:  Would counsel for the plaintiff
  4     please state his appearance for the record.
  5              MR. DRUZ:  Yes.  Good evening, your Honor.  I'm Dan
  6     Druz.  I'm an attorney who is a member of the Bar of this
  7     Court, and my office is located in Manasquan, New Jersey.  How
  8     are you, your Honor?
  9              THE COURT:  Fine.  Good afternoon, Mr. Druz.
 10              THE DEPUTY CLERK:  Counsel for the defendant?
 11              MR. LILLING:  Yes, your Honor.  Bruce Lilling from
```

```
12     Lilling & Lilling PLLC, and sitting to my right is Oliver
13     Velez.  He's the principal of the corporate defendant, and he's
14     also named as an individual defendant.  And the other two
15     people here are law students who are interning at our office
16     this summer, and they're here to see how the federal court
17     works.  So I hope that that presents no difficulty for you.
18              THE COURT:  All right.  Good afternoon, Mr. Lilling.
19     I hope that we can show them that we're functioning on all
20     cylinders.
21              All right, Mr. Druz, you have an application for a
22     temporary restraining order.  Have all the defendants been
23     served?
24              MR. DRUZ:  Your Honor, the three defendant employees
25     or employee defendants, as I refer to them in the complaint,
```

                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300

                                                                      3
76jzpri1
```
 1     I'm not certain if proper service has been made.  One, there
 2     was an attorney involved for a Florida resident and he's not
 3     indicated to me whether whether or not he would be representing
 4     him in this matter, and I haven't heard from the other two
 5     either.  So I can't tell you that they have been, with
 6     certainty.
 7              THE COURT:  All right.  Tell me why it is you believe
 8     you're entitled to emergency relief.
 9              MR. DRUZ:  Sure.  Your Honor, let me cut right to it.
10     I know you've had a long day.  And if you look at exhibit
11     seven, which was annexed to the declaration of Anthony S.
12     Nunez, there's three declarations, and I numbered the exhibits
13     sequentially, even though they're with different declarants.
14     The one in particular that I'm looking at is a Mr. Nunez's
15     declaration, and attached to it is an advertisement or
16     promotional material for a seminar that was held.  It was held
17     a couple weeks ago by Mr. Velez and VCM Capital.  And that
18     promotional material is really the nub of our case, at least
19     our application for the temporary restraining order, because
20     it's rife with misinformation that all leads back to Pristine
21     Capital Holdings, my client.  Pristine holds many trademarks,
22     but most of them are Pristine, Pristine.com, Pristine, the
23     Pristine Method, there's a whole series of them.
24              THE COURT:  Does your client own the mark, The
25     Pristine Method?
```

                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300

                                                                      4
76jzpri1
```
 1              MR. DRUZ:  Well, I was surprised -- I saw the
 2     defendant's response at 3:30 today, and I was surprised to see
 3     his challenge.  And I checked back with my headquarters.  I
 4     wasn't able to get ahold of Pal Goldstein, the Washington firm
 5     that handles the filings, but I was assured that yes, in fact,
 6     Pristine Capital Holdings does own Pristine Capital Management,
 7     which is listed on the particular documents related to the
 8     service marks, and that all of the appropriate notices have
 9     been filed with the trademark office.  I can't tell you any
10     more than that because I couldn't get the attorney from Pal
11     Goldstein on the phone.  I could only tell you what I was told
12     by my client.  But yes, Pristine Capital Holdings -- Pristine
13     Capital Management was the predecessor firm to Pristine Capital
```

```
14   Holdings, and they purchased the records.
15              (Continued on next page)
16
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

```
76JFPRIC
1            THE COURT:  Is there any evidentiary support here in
2   the papers before me for this chain of corporate ownership?
3            MR. DRUZ:  No, your Honor, there is not.  There is
4   not.  I was surprised at the challenge.  I had -- Mr. Velez is
5   here today.  I don't have them, but Mr. Velez is here today.  I
6   think he would be surprised as well there would be any
7   challenge to Pristine Capital being the rightful owner of these
8   service marks.
9            Should I continue?
10           THE COURT:  Yes.
11           MR. DRUZ:  Okay, thank you.  So Pristine is a
12  registered mark, Pristine, the Pristine Method is a registered
13  mark and if you look at page 2 of the exhibit, I believe your
14  law clerk has given to you, it's a two-column page.
15           THE COURT:  Which exhibit is it?
16           MR. DRUZ:  This is Exhibit 7 annexed to Anthony
17  Nunez's declaration, Anthony Nunez being executive of the
18  company.  And the first page you see would be -- do you have
19  this on the first page?
20           THE COURT:  I have something that looks like it was
21  Exhibit 7, but then it was made into an 8, and it's a one-page
22  e-mail.
23           MR. DRUZ:  That is not the exhibit that I'm
24  referencing.  The exhibit I'm referencing is Exhibit 7 attached
25  to Anthony Nunez's declaration.  You're looking at one of the
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

```
76JFPRIC
1   exhibits attached to my own declaration.
2            THE COURT:  All right.  I've got the Nunez declaration
3   in front of me now.
4            MR. DRUZ:  Okay, your Honor, thank you.  If you turn
5   to Exhibit 7 --
6            THE COURT:  I'm looking at it.
7            MR. DRUZ:  So the first page looks like this, Judge,
8   and then the second page is the page I would like to direct
9   your attention to.
10           In the right-hand column, this promotional material
11  talks about Oliver Velez.  And if you go down to the third
12  paragraph, it starts off by saying that Mr. Velez is
13  internationally known for founding and growing Pristine Capital
14  Holdings.  Pristine is also a registered service mark.  You
15  know, we have a global brand with Pristine Capital Holdings.
```

16  We don't disagree with Mr. Velez that he's internationally
17  known, and if you continue in that paragraph, it says that he
18  grew that company over the last twelve years into the country's
19  premier educational institution for investors and self-directed
20  retail traders. Again, we do not disagree with him. We
21  wholeheartedly agree.
22          But then it starts to veer off a little bit. It says
23  that as Pristine's chairman, and I don't mean to be repetitive,
24  but Pristine is a registered service mark, and CEO for twelve
25  years, he decided to turn his full attention to professional

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

76JFPRIC
1  trading area. Now, Judge, I don't know how much you want me to
2  go into about the facts about this ancillary securities
3  industry, but --
4          THE COURT: Now, I'm just waiting to hear the
5  pertinent facts that you say support an application for
6  emergency relief.
7          MR. DRUZ: Okay, I'm getting to them, Judge.
8          THE COURT: Okay, well, we've been going at it for ten
9  minutes. All right? Why don't you jump right to it?
10         MR. DRUZ: All right. Judge --
11         THE COURT: Let me jump right to it.
12         MR. DRUZ: Yes.
13         THE COURT: Isn't it the content that you claim is
14  purportedly being misappropriated here?
15         MR. DRUZ: Well, that's true, but that's not the
16  purpose of this application. The purpose of this application
17  is to show that Pristine, the registered mark, is being used to
18  confuse the public in order to enable Mr. Velez and VCM --
19         THE COURT: Okay, what other than Mr. Velez saying
20  that he served as Pristine's chairman, what else is it that you
21  say constitutes misappropriation of the Pristine mark? Because
22  I could tell you right now I'm not persuaded by that one.
23         MR. DRUZ: It's the -- within the content of this
24  promotional material, it refers to Pristine as being an entity
25  that does things that it does not do. And so the mark --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

76JFPRIC
1          THE COURT: Wait. You've taken me to the third
2  paragraph in the second column. You said something like you
3  agreed with the first two statements in that paragraph, but
4  then told me it veered off.
5          MR. DRUZ: That's correct.
6          THE COURT: Well --
7          MR. DRUZ: Because the Pristine mark, according to the
8  registration with the Trademark Office, is only to be used in
9  certain methods. With seminars, with DVD's that tape those
10  seminars and with certain other publications and media, and
11  what's happening here is Mr. Velez is indicating that the
12  Pristine method, another registered mark of the company, and
13  Pristine in particular, functions in a different way than what
14  the mark is going to prove.
15         THE COURT: Isn't he simply saying that he's the
16  former chief executive of Pristine, and isn't that fair use?
17         MR. DRUZ: Well, your Honor, I guess I disagree with

```
18  that.  Because I don't think it can be fair use --
19          THE COURT:  You don't think he can say -- he was the
20  former CEO, right?
21          MR. DRUZ:  Agreed.
22          THE COURT:  You don't think he can say that?
23          MR. DRUZ:  I don't think he can say that he trained
24  60,000 people in what appears --
25          THE COURT:  Where does he say that?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

76JFPRIC

```
 1          MR. DRUZ:  Says that in the first paragraph.  Says in
 2  the first paragraph on the fifth line down.
 3          THE COURT:  Right.  How is that trademark
 4  infringement?
 5          MR. DRUZ:  If you go through and see where he refers
 6  to books that he has written as it relates to those seminars
 7  and you go to those books, they, too, refer to pristine.com and
 8  to the Pristine registered mark, but in fact, the 60,000
 9  traders were not -- the 60,000 persons who were supposedly
10  educated in those seminars under the Pristine method were not
11  in fact educated in that manner.  The number is incorrect.  The
12  process that was used is incorrect.
13          THE COURT:  How is that trademark infringement, which
14  is the gravamen of your claim to come into this magnificent
15  courthouse?
16          MR. DRUZ:  Your Honor, the word "Pristine," the mark
17  "Pristine" has a certain quality that has become associated
18  with it over time, and that when a trader in that trading
19  community sees an adverse promotional material that says
20  "Pristine" on it, he associates a level of honesty, he
21  associates a variety of quality factors with it.  This
22  promotional material is completely inaccurate as to those
23  qualities.
24          THE COURT:  Just explain to me how the defendants are
25  using the same or similar mark to Pristine other than through
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

76JFPRIC

```
 1  their fair use references that Velez, the defendant, was the
 2  former CEO of Pristine.
 3          MR. DRUZ:  Admittedly, I can't get past your -- I'm
 4  not going to call it a ruling, but your assumption that it's
 5  fair use.
 6          THE COURT:  It's not a ruling.  I'm asking about the
 7  law.  You're here alleging trademark infringement.  Where is
 8  it?
 9          MR. DRUZ:  And I'm saying that every reference to
10  Pristine that's made in here is an inaccurate one, and thereby
11  diminishes the value of that mark.
12          THE COURT:  Where on this page does Velez use the term
13  "the Pristine Method"?
14          MR. DRUZ:  He doesn't.  He uses just the registered
15  mark Pristine.
16          THE COURT:  Where does he use the registered mark
17  Pristine?
18          MR. DRUZ:  He does not put the registered mark next to
19  it, but he uses the word "Pristine" at the third paragraph and
```

```
20   again --
21            THE COURT:  Line 2?
22            MR. DRUZ:  Yes, Pristine Capital Holdings.
23            THE COURT:  He says that he's the former CEO of
24   Pristine Capital Holdings.  You think that that's trademark
25   infringement?
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

                                                                11

```
76JFPRIC
1             MR. DRUZ:  And there's another place, Judge.
2             THE COURT:  You think that's trademark infringement?
3             MR. DRUZ:  Where he refers to Pristine and he
4    associates all of these, I'm going to call them negative
5    services and negative -- negative for us in terms of the manner
6    in which he's conducting his business, yes.
7             THE COURT:  How is it negative?  He's saying that he
8    founded and grew Pristine Capital into one of the company's
9    premier educational institutions.  How is that negative?
10   Assuming that it's not fair use, which is an assumption that I
11   think you can't make.
12            MR. DRUZ:  It's negative in the totality of the
13   content of this promotional material, because it misstates what
14   it is that the Pristine -- what it is that Pristine does, it
15   misstates those things that are associated with that mark.
16            THE COURT:  I thought the thrust of your complaint in
17   this case was that Mr. Velez took the Pristine method, slapped
18   a new name on it, called Trade for Life, and went out and is
19   marketing and selling Trade for Life.
20            MR. DRUZ:  Yes, that would go to some of the other
21   claims, your Honor.  I hadn't asserted that as part of this
22   particular application.
23            THE COURT:  Okay.  So let me just see if I have this.
24   The only basis for you to be here in federal court is if you
25   have a federal trademark claim, right?
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

                                                                12

```
76JFPRIC
1             MR. DRUZ:  Yes.
2             THE COURT:  All right.  Is there anything else to
3    support your federal trademark claim, other than the reference
4    to Pristine Capital Holdings in the third paragraph of Exhibit
5    7 and the statement that after serving as Pristine's chairman
6    and CEO for twelve years, Mr. Velez decided to turn his full
7    attention to the professional trading arena?
8             MR. DRUZ:  Yes, Judge.  The references to the
9    seminars, which could only have occurred at Pristine, because
10   Mr. Velez went from Pristine to VCM with no break and no other
11   employer, are inaccurate.  And so they're violative of,
12   (a)(1)(a) and (b).  Section 1125(a)(1), subparagraphs (a) and
13   (b).
14            THE COURT:  Forgive me if I'm not getting it,
15   Mr. Druz, but in your memorandum of law at page 5, you say of
16   Mr. Velez, quote, "He's likely seeing the same teacher,
17   teaching the same program, using the same manual, only with a
18   different cover!"  Close quote.  That's the customer confusion
19   that you describe in your memorandum of law, isn't it?
20            MR. DRUZ:  Yes, I did pick out that point, yes, sir.
21            THE COURT:  How is that trademark infringement?
```

```
22            MR. DRUZ: Well, I would not rely so much on that as I
23   would on the attachment to the declaration, and where
24   there's --
25            THE COURT: We're back to Exhibit 7?
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    13

76JFPRIC
```
 1            MR. DRUZ: Yes, sir. Where there's comments like,
 2   "They proved how potent they are by providing a big score,
 3   high-octane trading style," that "this method, microtrading has
 4   the potential to serve as a solution to many of the world's
 5   social ills."
 6            The whole tenor of this is now associated with the
 7   trademark Pristine, and it's a piece that's beyond puffery, so
 8   now people will associate this piece of advertising, the
 9   promotional piece, this highly deceptive one, with Pristine.
10   Mr. Velez in this advertising material relies on his background
11   with Pristine, and so there's a connection that's to be made
12   between Velez Capital Management and Pristine that should not
13   be made, but if you read through the totality of this
14   promotional piece which attributes, has these wild claims with
15   it, that is not a good thing for maintaining the strength of
16   our mark.
17            It's associating our mark unwillingly with a --
18            THE COURT: If Mr. Velez taught 60,000 people around
19   the world how to day trade or whatever it is, why shouldn't he
20   be able to say that?
21            MR. DRUZ: He should be able to say it, but he
22   shouldn't infer that it was not with Pristine or that it was
23   somehow with this competitive firm. He shouldn't pump up that
24   product at the expense of Pristine. He's only been at --
25            THE COURT: How is that trademark infringement?
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    14

76JFPRIC
```
 1            MR. DRUZ: Because my understanding of the statute,
 2   with particularly the section 1125(a)(1)(a) and (b), in
 3   commercial advertising and promotion misrepresenting the
 4   nature, characteristics, qualities or geographic origin of his
 5   or her or another person's goods, services or commercial
 6   activities, in this case the services, various names for which
 7   we've obtained service marks for.
 8            THE COURT: Anything else?
 9            MR. DRUZ: No, sir. Thank you.
10            THE COURT: Mr. Lilling, do you want to be heard?
11            MR. LILLING: Yes, just briefly, your Honor. I must
12   tell you I read this complaint several times and I don't have a
13   clue what his complaint is. This is the first time now I'm
14   starting to get an inkling that he's not talking about
15   trademark infringement or copyright infringement, but he's
16   talking about false advertising.
17            Be that as it may, let me go through a couple of quick
18   points. On this Exhibit 7, if you look at the first page,
19   which he glossed over quickly --
20            THE COURT: Hold on.
21            MR. LILLING: You'll see that he has his new company
22   name there pretty prominently, his personal name and his
23   trademark Trade for Life. Now, I'll concede that if he had put
```

```
24     Pristine there, that would be a classic case of trademark
25     infringement.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

76JFPRIC

```
 1             Now, as we get into the text, there are two versions
 2     of this document.  This is the one that was circulated without
 3     Mr. Velez' consent and has a minor error in it, and it's
 4     different from the one that appears on his website.  In
 5     particular, it's in the second column in the first paragraph,
 6     where it refers to the 60,000 traders, and it says, "His Trade
 7     for Life seminars and five-day" --
 8             THE COURT:  I see it.
 9             MR. LILLING:  That's the error, because it was not
10     supposed to say his Trade for Life seminars, because under that
11     name he didn't train 60,000 people.  This was put out by
12     somebody who put it out too quickly without him checking it.
13     If you look at the same version on his website, you'll see that
14     that language has been massaged so it doesn't refer to Trade
15     for Life, but merely refers to the fact that Mr. Velez himself
16     taught 60,000 people, which, as you had suggested, there's
17     nothing wrong with that if in fact he did, and in point of
18     fact, Mr. Velez taught approximately 60,000 people, whereas
19     Pristine taught approximately 88,000.  Though, of course, there
20     is some overlap there.
21             I don't really have much more to say on the trademark
22     infringement issue, because you said it better than me, that
23     it's fair use.  But I would like to mention on the ownership
24     issue, I have here a copy of a printout from the New York State
25     Department of State from yesterday which says that Pristine
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

76JFPRIC

```
 1     Capital Management is an inactive company --
 2             THE COURT:  You don't have anything more recent than
 3     yesterday?
 4             MR. LILLING:  Sorry.  I didn't find out about the case
 5     until yesterday morning.  Mr. Velez thinks it went inactive in
 6     the year 2000, but -- oh, we do have something from today, your
 7     Honor.  We went on the Patent Office website and for every
 8     single one of the registrations he cites, we have a printout
 9     from the Patent Office saying no assignment has been recorded.
10     This has today's date on it, with a heading for the U.S. Patent
11     Office.  So I don't understand the comment that they're in the
12     process of doing the paperwork, but I don't know that it really
13     makes any difference, because there can't be trademark
14     infringement unless the accused is using the alleged trademark
15     in some way, shape or form, which we're not doing.
16             So, in fact, we don't even have an objection to an
17     injunction on using the Pristine method because we don't use
18     it.  We never use it and we have no intention of using it.
19     However, we do think we should be entitled to the fair use of
20     saying that Mr. Velez previously worked at Pristine Capital
21     Holdings, but that's not trademark use and there's no case that
22     has ever held that as trademark use.
23             We also have the issue that if we read the first
24     paragraph of his requested TRO, he's clearly asking for relief
25     under the copyright law, because he's asking that materials not
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

76JFPRIC

1  be distributed, and you'll notice how they only give you the
2  first page of the two PowerPoint presentations.  One of the
3  reasons they did that is because they didn't want you to look
4  at both of them, because if you took both of them and looked at
5  them side by side, you'll find out that there's no
6  similarities.  But even still, your Honor, they don't have a
7  copyright certificate, so we don't even get in the door on
8  copyright.
9            THE COURT:  They don't have a copyright claim in the
10 complaint.
11           MR. LILLING:  Well, they talk about taking the
12 manuals.  I mean, they don't refer to the copyright law, but if
13 you look at paragraph 40, which is inartfully drafted, even
14 though he's referring to a trademark statute, when I read that,
15 it sounded to me more that he was complaining about our taking
16 manuals and materials as opposed to improperly using the
17 trademark.  That's why I say I don't know if they're talking
18 trademarks or copyrights.
19           THE COURT:  All right.
20           MR. LILLING:  And as far as the state causes of
21 action, I don't think there's jurisdiction, because I don't
22 think he has made out a prima facie case of any federal claim,
23 so then there's no reason for the Court to be looking at the
24 state causes of action.
25           THE COURT:  All right.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

76JFPRIC

1            MR. LILLING:  And that's really all we need.
2            THE COURT:  Is there anything further, Mr. Druz?
3            MR. DRUZ:  Yes, Judge, very briefly.  I just don't
4  believe it would be fair to consider the ownership issue.
5  Mr. Lilling had discovered it and had the opportunity to make
6  me aware of it, I only found out about it 3:30 today, which
7  handcuffed me in terms of being able to show the ownership of
8  the trademark and service mark.  That's all.
9            THE COURT:  Okay.  But you filed this action.  One
10 would think that as a matter of due diligence you would check
11 to make sure that your client actually owns the trademark
12 before you sue on it.
13           MR. DRUZ:  Judge, in my own defense, the letters which
14 were written to Pristine Capital Holdings that cover the
15 documents from the Patent and Trademark Office are all
16 addressed to Pristine Capital Holdings saying we have done what
17 you asked us to do, so I don't think I made a terrible
18 assumption.  Harold Goldstein, the premier patent and trademark
19 attorneys in Washington, would have made that mistake, but I
20 have spoken to Pristine and they told me, and I have asked them
21 before, that they do own these registered marks.
22           THE COURT:  All right.  There are a lot of issues
23 here.  Because there are a lot of issues here, it's clear to me
24 that emergency relief is not warranted.  Let's fix a schedule
25 for briefing on this motion for preliminary injunction.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                                 19
        76JFPRIC
 1              First of all, do you want to amend your complaint?
 2              MR. DRUZ:  I will want to, yes.
 3              THE COURT:  And try to clean it up?
 4              MR. DRUZ:  Yes, absolutely.
 5              THE COURT:  Because it's a train wreck.
 6              MR. DRUZ:  Okay.
 7              THE COURT:  When are you going to file an amended
 8   complaint?
 9              MR. DRUZ:  Can I just check one second, please?  Two
10   weeks?
11              THE COURT:  Whatever time you want.
12              MR. DRUZ:  I'd like 30 days.
13              THE COURT:  Take 30 days.
14              MR. DRUZ:  I'll take 30 days.
15              THE COURT:  You'll file an amended complaint.  Since
16   you're going to file an amended complaint, do you want to
17   withdraw this motion and file a motion when you file your
18   amended complaint?
19              MR. DRUZ:  Yes.
20              THE COURT:  All right.  This motion for preliminary
21   injunction is withdrawn.  File an amended complaint and a
22   motion for a preliminary injunction if you decide that's what
23   you want to do 30 days from today.  That is by July 19.  How
24   much time do you want to respond to the motion?
25              MR. LILLING:  Your Honor, I'm scheduled for an
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                 20
        76JFPRIC
 1   out-of-the-country business trip starting on the 26th, so I'm
 2   going to ask for a month from the 19th, otherwise, because I'll
 3   be gone for ten days.
 4              THE COURT:  August 17.
 5              MR. LILLING:  Okay, August 17.
 6              THE COURT:  Any reply by August 27.  And I'll hear
 7   oral argument on August 31 at 10:30.  I'll enter a scheduling
 8   order to that effect.  Is there anything further?
 9              MR. LILLING:  Your Honor, in the concluding portion of
10   my letter today, I asked the question of whether we might be
11   entitled to attorneys fees before being required to work on an
12   expedited basis for answering what's clearly a frivolous and
13   unjustified request for a TRO.  So I just leave that within the
14   Court's discretion.
15              THE COURT:  Well, you're about 4500 miles too far west
16   for that request.
17              MR. LILLING:  Okay.  Thank you, your Honor.
18              THE COURT:  In Great Britain, they do it, but not
19   here.
20              Mr. Druz, I think you better think through this case.
21   I will tell you viscerally, I'm not seeing any trademark
22   infringement here.  I see only fair use and at the end of the
23   day, if there's no statutory basis to be here under the
24   trademark laws or some other federal statute, then you should
25   be pursuing your contract claims in the palace of justice
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                 21
        76JFPRIC
```

```
 1   across the street, because otherwise you're just going to go
 2   through a lot more motion practice here, and if you decide to
 3   simply withdraw this case here and proceed across the street on
 4   a contract claim, just file a Rule 41 notice of dismissal.  You
 5   might be saving a lot of effort on everybody's part.  All
 6   right?
 7            MR. DRUZ:  Okay, Judge.  I hear you loud and clear.
 8            THE COURT:  All right.
 9            MR. DRUZ:  Judge, I didn't want to be discourteous.
10   Thank you for your courtesy yesterday in permitting me to go to
11   my son's graduation instead of coming in here.
12            THE COURT:  Of course.  All right, counsel, thank you
13   very much.
14            MR. LILLING:  Thank you, your Honor.
15            THE COURT:  I hope your interns think we're operating
16   on all cylinders, Mr. Lilling.  Have a good evening.
17            MR. LILLING:  Thank you.
18            (Adjourned)
19
20
21
22
23
24
25
```

                         SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300