# EXHIBIT 2 TO THE MEMORANDUM OF LAW

Ex2mol

# DAN A. DRUZ

*Attorney at Law*
291 E. Main St.
Suite 1000
Manasquan, New Jersey 08736
Tel: 732 223-7676 *** Fax: 732 223-1592

<u>VIA OVERNIGHT MAIL SERVICE</u>

August 17, 2007

FINRA Dispute Resolution
One Liberty Plaza, 27th Fl.
165 Broadway
New York, NY 10006

Re:   Greg Capra et al. v. Oliver Velez (CRD# 3264135)
      <u>FINRA Dispute Resolution</u>

Dear Ms. / Sir:

     I represent the claimants. Please find enclosed herewith five copies of the Statement of Claim for commencement of an arbitration proceeding. A copy of the executed Uniform Submission Agreement is being sent under separate cover. Please invoice me for the proper filing fee, or contact me at 732 822-1052, and I will forward it to you immediately.

     Address for service on Respondent Velez is:
Oliver L. Velez
14 Richbell Rd.
White Plains, NY 10605.

I have simultaneously forwarded to him a courtesy copy of this letter and the Statement of Claim.

Very truly yours,


cc:   Oliver Velez

FINRA DISPUTE RESOLUTION

In the Matter of the Arbitration between

GREG CAPRA AND PRISTINE CAPITAL
HOLDINGS INC.,

        Plaintiffs,

and                                    STATEMENT OF CLAIM

OLIVER L. VELEZ,

        Respondent.

       Plaintiffs Greg Capra and Pristine Capital Holdings, Inc., through the undersigned attorney, by way of Complaint against Respondent Oliver Velez, state as follows:

### **Parties**

       1.     Plaintiff Greg Capra is one of the co-founders of Pristine Capital Holdings, Inc., ("PCH"), as well as a forty-seven (47) percent shareholder. He is currently PCH's President and CEO. At various relevant times herein, he was a registered principal of Pristine Securities LLC d/b/a Mastertrader.com ("MTC"), the broker-dealer subsidiary of PCH, and a FINRA member firm.

       2.     Plaintiff PCH is a Delaware corporation with its principal place of business located at 7 – 11 Broadway, Suite 210, White Plains, New York 10601. It has two wholly owned subsidiaries, one of which is denominated Pristine Services Inc ("PSI"), and the other is MTC.

registered principal with MTC, the broker-dealer subsidiary of PCH. He is presently the CEO of Velez Capital Management LLC ("VCM").

4. VCM is a New York limited liability corporation, with principal offices located at 130 West 42nd Street, Suite 450, New York, NY 10036.

## Facts

5. Plaintiff, through one of its subsidiaries, provides educational support and information services to active securities traders via the internet, seminars, publications, and DVDs and is considered to be a leader in the securities education industry.

6. Combined, these services are known to clients and to the public by the registered service marks and trademarked sales, marketing and educational process – "The Pristine Method®" ("TPM®").

7. For more than ten years, Velez had been the "face" of the company. On November 20, 2006, however, Respondent Velez was relieved of his executive duties as Chairman and CEO and removed as an officer and director as a result of his conversion of more than $250,000.00 of corporate funds to his personal use.

8. He was later terminated on February 21, 2007 by PCH for breaches of fiduciary duty, a number of major violations of company policy, including, but not limited to, the conversion of funds; removing, disclosing and using PCH intellectual property without permission; and for surreptitiously commencing the formation of his new company, VCM, that would directly compete against PCH.

9. No later than in November of 2006, after he was relieved of his executive

2

10. Although he was relieved of his executive duties in November of 2006, he was still employed by PCH through February 21, 2007. During that time, Velez and the company were negotiating the repayment of the stolen funds and Velez's future role with the firm.

11. Velez was not negotiating in good faith, however. Contemporaneous with the discussions, the purpose of which was to rehabilitate Respondent Velez as to his future role with the firm, he was surreptitiously creating VCM.

12. To fulfill the objective of forming VCM, he registered two websites, one on December 20, 2006 and another on February 14, 2007, while still in the employ of PCH.

13. A primary source of PCH's revenues is the distribution and sale of seminar presentations conducted live on site and via the internet, and recorded on DVDs and other electronic media.

14. With the benefit of hindsight, it is now clear that soon after he was relieved of his executive duties as CEO of the company in November, 2006, Velez surreptitiously began collecting and copying confidential information, such as customer lists, the electronic files of the referenced seminars, and other company confidential material and intellectual property, for his illicit use in creating VCM.

15. By January, 2007, if not earlier, and while still in the employ of PCH, Velez was also secretly developing relationships with other companies, which he claimed were for the benefit of PCH.

16. Further, he ignored the insistent requests of other PCH executives that he not develop associations with certain individuals whose reputation was inconsistent with PCH's

17. Contrary to these instructions, Velez proceeded to promote a joint seminar with a company of poor reputation in the "prop" trading industry ("HLV Trading"). When confronted by PCH management at that time, Velez intentionally deceived them by falsely claiming that the advertised event was for the exclusive benefit of PCH, when in fact the purpose of the seminar was the launching of VCM, Velez's new venture and future competitor of PCH.

18. It is incontestable that Velez's actions were in breach of his fiduciary duties and his duty of loyalty to PCH, of which he presently continues to be a 47% owner.

19. As demonstrated by emails sent by a company Vice-President to Velez on February 12, 2007, in which the executive complained to Velez that his inexplicable, bizarre, public association with a securities industry entity of dubious reputation, was causing confusion and discomfort among PCH staff and its customers:

> "[Our customers and employees] see HLV [the entity of ill repute referenced *supra*] commercials on CNBC for you doing a seminar with [a potential competitor] and wonder what the hell is going on. You tell us that it's nothing to worry about because you are "just" doing a book signing and will only be there for the last 5 minutes. Well I find it hard to believe that HLV is going through all this marketing just for 5 minutes of your time to sign books. There is no mention of any book signing.... It's marketed as a seminar that you are doing and they removed all links [from the HLV website] to Pristine. On top of all that, [our employees] are all in the dark about this. No one was informed about this. We have to find out about it via our clients. But not only that, you proceeded to set this up in a clandestine manner.

20. In fact, despite Velez's unequivocal denials, his presence at the HLV seminar held at the New York On-Line Traders Expo (February 17 – February 20, 2007) – the

4

heavily promoted and advertised by HLV on February 8 and February 9, 2007 on the HLV website's home page and via television commercials on CNBC, while Velez was still employed by PCH.

21. The objectionable seminar took place on February 18, 2007 as advertised. When PCH employees attempted to attend in order to observe Velez's role at the presentation, they were physically blocked from entering the room. Their exclusion was for reasons that later became obvious. Velez was using the venue to launch his new company, VCM.

22. Accordingly, Velez was immediately terminated, by letter dated February 21, 2007.

23. Because Velez had been a licensed principal of MTC, and because of the nature of his termination, in time it triggered a mandatory, internal regulatory review and related filings with FINRA.

24. The seminar event, in concert with the previous discovery of the conversion of a quarter million dollars in corporate funds to his personal use, which included lavish dinners, and illicit, substantial cash advances against his Corporate American Express Card at "strip clubs" (Exh. "1"), were the precipitating, but not the only factors that resulted in Velez's termination.

25. In response to his termination, Velez clearly indicated his mistaken belief that the proprietary information and materials underlying "The Pristine Method®" belonged to him, and that he could use them as he saw fit.

26. Contemporaneous with his termination from PCH, Velez was illicitly inducing certain key employees of PCH…

5

27. On or about 2/14/07 Velez hired Ortiz for his new venture, prior to Velez's termination with PCH. On or about 3/30/07 Velez hired Lange. On or about 4/25/07, Velez hired Cina. A present review of Velez's, Ortiz's and Cina's actions between December of 2006 and March of 2007, clearly indicates that the three were conspiring around that time regarding their exit strategy, even before Velez was terminated.

28. Except for the date of execution, the former employees' employment contracts were identical, and contained explicit restrictive covenants – non-compete, non-solicitation, and non-disclosure clauses at Paragraphs 3,4,5, and 6 thereof (Exhibit "2").

29. Velez induced all of the former employees to breach their employment contracts, and in particular, the restrictive covenants. Further, there can be no doubt that he was completely conversant with the terms of their contracts, as he was the PCH executive who had originally signed them.

30. In the course of their employment, Velez and the former employees had unfettered access to PCH's customer lists and other confidential and proprietary information. The materials taken by Velez and the key former employees, included critical information regarding its customers, specifically contact information, and a description of their needs and preferences for marketing purposes.

31. The information was confidential and belonged exclusively to PCH, which had compiled it over many years, and at significant cost. It comprised vital marketing and competitive information that could cause grave damage to PCH, if placed in a competitor's hands, as Velez and the former employees have done.

32. After the New York

development of a website, key sections of which were copied directly from PCH's. Using a similar format, VCM showcased a management team that previously appeared on PCH's internet site, with repeated references to PCH. In identical fashion to PCH, it also promoted on site and on line seminars, on site trading "labs", a live internet trading chat room, DVDs and other publications that together constitute the marketing of The Pristine Method®.

33. Also prior to his termination, Respondent Velez indicated that he was planning a seminar to be held in the first week of April, 2007 in Washington, D.C., under the auspices of PCH. Then, after his termination, Velez deceptively usurped this PCH corporate opportunity, and made the presentation in conjunction with other corporate interests.

34. Most of PCH's customers initially learn the securities trading process and methodology known as the "The Pristine Method®" by attending seminars. The basics of the process are presented through a lengthy "Power Point" presentation, which consists entirely of materials that are subject to registered service marks, trademarks and copyrights.

35. PCH offers two different seminars for different levels of expertise. Respondents Velez and VCM have fully co-opted one of the two presentations – the introduction to "The Pristine Method®". Indeed, in the manual provided to VCM seminar subscribers, which Velez has denominated "Trade for Life", approximately two thirds of the written presentation consists of charts lifted directly from the manual that is used by PCH to introduce "The Pristine Method®" to new clients.

36. According to VCM's website, the next and most audacious step until that time, in Velez's brazen plan to ruin PCH, took place in San Diego, California, at the San Diego

7

deploy the stolen intellectual property previously made public at the New York Online Traders Expo, and other PCH property as well.

37. Notwithstanding their agreement with PCH and Velez not to compete, solicit and/or disclose, the former employees participated in the San Diego event too.

38. Velez's actions have caused disruption and confusion among PCH's staff; its client base, lists of which Velez illicitly spirited out of the firm prior to his termination, and among the public. His acts have lessened corporate morale, and in addition to the former employees' departure, one other important employee has left PCH. These departures from PCH have caused substantial damages, and in a small company like PCH, with less than twenty professionals on staff in its educational subsidiary at the beginning of 2007, a 25% loss in key employees is an extraordinary one.

39. On Velez's website, and in his promotional materials, he brags:

> "His 'Trade for Life' seminars and five day live trading sessions have been attended by more than 60,000 traders all over the world...."

The statement typifies the deceptive trade practices and false advertising that he and his new company, VCM, have adopted. Velez has not presented to even one thousand people in person since he departed PCH, much less 60,000 people. In fact, it was the PCH organization and its team of instructors who accomplished that feat over the last decade, using the "The Pristine Method®", not the newly spawned "Trade for Life" ripoff that Velez is presently relying upon.

40. This intentionally confusing statement is an illicit attempt to exploit the goodwill and registered service marks of "TPM®". Also, by creating a website and

8

manner, Velez further contributes to confusion among the public, especially the part that constitutes PCH's customer base.

41.   Velez has also interfered with PCH's advantageous business relations, particularly with its publisher, who, as a result of misleading statements and pressure by Velez, placed a moratorium on the publishing and promoting of certain PCH merchandise that had been recently produced, at significant expense to Plaintiffs; and with MTC's regulator, FINRA, by refusing to cooperate with MTC in making its mandatory regulatory filings related to Velez's termination.

42.   In sum, Velez and his new company are unfairly competing by using PCH's client lists, photocopies of TPM® materials, intellectual property, business contacts, goodwill, and former personnel who are in breach of employment agreements that were negotiated by Velez himself on behalf of PCH, with the intent to confuse the public, and to augment Velez's and VCM's competitive standing.

43.   To redress the injuries it has suffered, PCH seeks, *inter alia*, with respect to use of stolen intellectual and proprietary customer information, an accounting of all revenue derived from the use of PCH's confidential and proprietary information and the permanent enjoining of Velez from allowing the former employees from the continued breach of the covenants contained in their employment contracts.

44.   Upon a plenary hearing, PCH will also seek repayment of the $250,000.00 in converted funds; a direction to Velez to comply with the contractual remedies contained in the employment contracts of the former employees, the breach of which he induced; remedies of various common law violations; and additional compensatory and punitive damages.

9

## FIRST CAUSE OF ACTION
(Conversion of funds)

45. Respondent Velez converted at least $250,000.00 in corporate funds to his personal use, which remain due and owing to PCH.

## SECOND CAUSE OF ACTION
(Conversion of intellectual property)

46. Respondent Velez provided PCH intellectual property and confidential information to VCM customers and prospective customers without authorization from PCH, thereby depriving PCH of the revenues from the sale of DVD's, revenues from the sale of seminar admissions and other compensation.

## THIRD CAUSE OF ACTION
(Inducement of Breach of Contract and Covenants Not to Compete, Not to Solicit and Not to Disclose Confidential Information)

47. In their employment contracts the former employees agreed to covenants not to compete with PCH, not to solicit customers or employees, during their employment by PCH or for one year after their departure from PCH; and to never divulge PCH's confidential information.

48. The former employees, by Velez's inducement, have breached the terms of their employment contracts by, within one year of their termination 1) joining VCM, a direct competitor firm; and 2) soliciting current and former PCH customers and employees.

49. The former employees have also breached their covenant not to disclose confidential PCH information obtained during that employment, including but not limited to customer lists, pricing structures and stock trading processes, and information related to TPM®.

## FOURTH CAUSE OF ACTION
### (Refusal to Abide by NASD Supervisory and Regulatory Rules with the Intent of Harming MTC)

50. In an attempt to cause damage to MTC, Respondent refuses to cooperate with MTC in fulfilling its regulatory duties.

51. In consequence of his prior position as a Registered Principal of MTC, and his present status as an Associated Person of MTC, Velez is subject to the federal securities statutes, SEC regulations, and FINRA Rules, the enforcement of which are the mandated responsibility of MTC.

52. Presently, Velez is in noncompliance of certain FINRA Rules and refuses to cooperate in providing information required under the rules, which may result in damaging regulatory action against MTC in the form of substantial sanctions and fines.

## FIFTH CAUSE OF ACTION
### (Unfair Competition)

53. For over a decade, PCH, and "The Pristine Method®" ("TPM®") have set the standard for the education of active securities traders around the world. The resources and methods used are all subject to registered service marks, trademarks and copyrights. Velez and VCM, through repeated reference in advertising and promotional materials, and by cloning TPM® for Velez's and VCM's use, are causing great confusion among the trading community and the public at large, to the detriment of Plaintiffs.

54. Respondent has engaged in a variety of acts, including the conversion of confidential information owned by PCH to the use of VCM, in bad faith, and with intent to injure, weaken or destroy PCH's rights to and interests in TPM® and other marks, and to

11

## SIXTH CAUSE OF ACTION
### (Faithless servant)

55. Respondent Velez's conduct is that of a faithless servant under New York law and he must disgorge all salaries earned and profits received both prior to and after his termination from PCH. *Duane Jones Company, Inc. v. Burke,* 306 N.Y. 172 (1954)

## SEVENTH CAUSE OF ACTION
### (Breach of Duty of Loyalty)

56. Respondent Velez owed a duty of loyalty and other fiduciary duties to PCH as its Chairman and CEO and because of his 47% ownership interest.

57. By commencing, surreptitiously, the formation of VCM while still employed by PCH, and as a 47% owner of PCH, and by inducing the former employees to breach their PCH employment contracts and the non-compete, non-solicitation, and non- disclosure covenants, Velez breached his duty of loyalty to PCH.

58. By performing work for VCM while employed by PCH, Velez breached his duty of loyalty to PCH.

59. By providing confidential PCH information to VCM, which is in direct competition with PCH, Velez breached his duty of loyalty to PCH.

## EIGHTH CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Advantage)

60. In order to solicit and enter into relationships with current and former PCH customers, Velez has maliciously used confidential PCH information, including but not limited to customer lists and pricing structures.

current and former PCH customers, some of PCH's customers have terminated all or part of their relationships with PCH and/or entered into relationships with VCM.

62. There is a reasonable probability that in the absence of the intentional and malicious use of confidential PCH information by respondent and VCM in the course of their solicitation of current and former PCH customers, those customers would not have terminated all or part of their relationships with PCH, and would have continued their relationships with PCH.

63. Respondent and the former employees have used confidential information to solicit PCH customers with the intent to harm PCH.

**WHEREFORE**, plaintiff respectfully requests the following relief:

A. The repayment of the $250,000 of corporate funds unlawfully converted to Velez's personal use.

B. Additional compensatory damages in an amount not less than $750,000.00, plus attorney's fees, pursuant to the terms of the former employee contracts, and fees and costs related to this proceeding.

C. On all of PCH's Causes of Action, punitive damages in an amount no less than $1,000,000.00.

D. Permanent injunctive relief:

   1. Directing Velez to immediately Cease and Desist from inducing the breach of the employment agreements of the former employees, which contain restrictive covenants forbidding them from competing with Plaintiff for one year after their employment terminates with PCH; from soliciting Plaintiff's customers or employees for one year after their employment terminates with PCH; and from ever disclosing the confidential information of PCH;

13

2. Directing Respondent to Cease and Desist from using materials obtained from PCH, including but not limited to materials taken from "The Pristine Method®" manual;

3. Directing Respondent to immediately Cease and Desist from copying and using Plaintiffs' copyrighted and trademarked material, and registered service marks, including but not limited to The Pristine Method®;

4. Directing Respondent to immediately Cease and Desist from copying materials copyrighted and trademarked by Plaintiffs and presenting them to the public as part of the "Trade for Life" methods and seminars presented by Velez Capital Management;

5. Directing Respondent to immediately Cease and Desist from presenting to current and future customers "The Pristine Method®" and other registered and trademarked materials, disguised as "Trade for Life";

6. Directing Velez and VCM to provide an accounting of all compensation and revenues received by Velez and VCM to date; and

7. Directing Velez and VCM to disgorge all salaries and profits, paid to Velez and to the former employees; to return all PCH materials removed during the term of their employment; and to identify and erase and/or return as applicable, all electronic records taken from PCH during the term of their employment.

_____
Dan A. Druz
Attorney for Claimants
291 E. Main St.
Suite 1000
Manasquan, NJ 08736
732-223-7676

Dated: August 17, 2007