In or about 2001, Petitioner and Capra founded Pristine Securities, Inc., a broker-dealer registered with the Securities and Exchange Commission ("SEC") and a member of the NASD ("Pristine Securities" or the "Broker-Dealer").

In or about 2001, Petitioner and Capra founded Pristine Services, Inc.

In or about 2001, Petitioner and Capra formed Pristine Capital Holdings Inc. and dissolved Pristine Capital Management Inc. Pristine Capital Holdings Inc. became the holding company for Pristine Securities Inc. and Pristine Services Inc. In addition, the shares of Pristine Capital Holdings Inc. were allocated 47% to Petitioner and 47% to Capra respectively.

Pristine Capital is not a member of the NASD. The NASD member firm is Pristine Securities Inc. and Pristine Securities is not a party to the Arbitration for which this instant stay is being sought.

Petitioner Velez was the Chief Executive Officer of Pristine Capital and his role was to conduct seminars on how to trade securities. The seminars were organized and conducted by Pristine Services. Students who completed the training were solicited by registered representatives of Pristine Securities to open brokerage accounts with Pristine Securities.

Petitioner had no role in the management of Pristine Securities; his role in Pristine Securities was solely limited to that of a capital contributor or capital participant – a role that did not require him to register with Pristine Securities.

However, Petitioner was registered with Pristine Securities as an Associated Person even though there was no requirement that he register. The NASD Rules include in the definition of "Associated Person" persons who directly or indirectly control a broker-dealer. "Control" is deemed to be present under the SEC's Uniform Application for Broker-Dealer Registration ("Form B/D") when a person holds 25% or more of the

equity of a broker-dealer. The NASD uses the same 25% equity ownership standard in determining when "Control" is deemed to be present.

However, although the NASD Rules define a person who controls 25% or more of a broker-dealer as an "Associated Person," there is no requirement that such a person register with the NASD if his role is limited solely to that of a capital contributor or participant.

*See Article 1(z) of the NASD By-Laws, Rule 1060(a)(3) of the NASD's Membership and Registration Rules, Rule 1017(a)(4) of the NASD's Membership and Registration Rules and the Definition Section of SEC Form B/D – all of which are attached hereto per Exhibit 2 to this Memorandum.*

In order to register Petitioner, Pristine Securities submitted a Form U-4 (Uniform Registration Notice for Securities Industry) with the NASD. Form U-4 is a notice filing to regulators and to the public at large that a particular person is associated with a broker-dealer.

Section 15A(5) of the Form U-4 contains a clause which binds a signatory to arbitrate disputes before the NASD Dispute Resolution as follows:

> *I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time………*

In or about December 2006, Petitioner resigned from his position as CEO of Pristine Capital.

In or about January 2007, Petitioner also resigned from his position as an Associated Person and/or Registered Person of Pristine Securities. To effectuate his resignation,

4

Pristine Securities filed a Form U-5 (Uniform Termination Notice for Securities Industry Registration) on behalf of Petitioner with the NASD.

Similar to a Form U-4, a Form U-5 is a notice filing to regulators and to the public at large that a particular person is no more associated with a broker-dealer. Filing of the Form U-5 effectively terminated Petitioner's association with Pristine Securities and any agreement to arbitrate disputes before the NASD.

Shortly after leaving Pristine Capital and Pristine Securities, Petitioner founded Velez Capital Management LLC.

## THE FEDERAL LAWSUIT COMMENCED BY PRISTINE CAPITAL

In or about June 2007, Pristine Capital commenced an action in the United States District Court, Southern District of New York, seeking Temporary Restraining Order against Petitioner. The federal suit alleged copyright and trademark infringement, unfair competition, breach of contract and covenant not to compete, breach of duty of loyalty, tortuous interference conversion, and faithless servant. After a hearing before Hon. Judge Pauley, Respondent withdrew the lawsuit.

*See Exhibit 3*

## THE NASD ARBITRATION COMMENCED BY CAPRA AND PRISTINE CAPITAL

On or about August 2007 Respondents commenced the instant NASD Arbitration against Petitioner alleging in sum and substance the same causes of action that was alleged in the federal suit that was withdrawn.

5

Respondents filed the NASD arbitration even though they knew that:

1. Petitioner has no agreement with Respondents to arbitrate matters before the NASD and that Petitioner's agreement to arbitrate pursuant to the Form U-4 (filed by Pristine Securities) was terminated when Pristine Securities filed the Form U-5 on behalf of Petitioner;

2. Respondent, Pristine Capital, is not a member of NASD and as such lacks standing to arbitrate matters before the NASD; and

3. The claims asserted in the Statement of Claim are not eligible for NASD arbitration because they relate to the business of Pristine Capital, a non-NASD member firm and that only matters related to the business of an NASD member firm are eligible for arbitration.

Petitioner has not materially participated in the NASD Arbitration based on his contention that he is not subject to any mandatory arbitration of any disputes with Respondents.

On or about September 20, 2007, Petitioner received a letter from the NASD requesting that Petitioner voluntarily submit to arbitration. However, the NASD has not demanded that Petitioner withdraw the Arbitration.

*See Exhibit 4*

**ARGUMENT**

**PETITIONER IS ENTITLED TO A PERMANENT STAY OF RESPONDENTS' ASSERTED CLAIMS IN THE NASD ARBITRATION BECAUSE THERE IS NO VALID AGREEMENT TO ARBITRATE BETWEEN THE PARTIES.**

CPLR Section 7503(b) provides, in relevant part that " ….. a party who has not participated in the arbitration …. may apply to stay arbitration on the ground that a valid

6

agreement was not made......" No party can be compelled to arbitrate unless the party has entered into an agreement to arbitrate. *See First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995); *Harriman Group v. Napolitano*, 213 A.D. 2d 159, 623 N.Y.S. 2d 224 (1st Dep't 1995); *Haviland v. Sachs*, 947 F. 2d 601, 604 ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). "The agreement must be clear, explicit and unequivocal..... and must not depend on implication or subtlety." *Harriman*, 213 A.D. 2d 159, 163, *citing, Matter of Waldron*, 61 N.Y. 2d 181 (1984).

While our Court of Appeals has recognized that arbitration is favored as a matter of public policy, equally important is the policy that seeks to avoid unintentional waiver of the benefits and safeguards which a court of law may provide in resolving disputes. *TNS Holdings v. MKI*, 92 N.Y. 2d 335 (1998).

In *TNS Holdings*, the Court stated:

> [U]nless the parties have subscribed to an arbitration agreement it would be "unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent." *Id. citing, Matter of Marlene Industries Corp.*, 45 N.Y. 2d 327, 333 (1978).

Therefore, a party may not be compelled to arbitrate and thereby surrender the right to resort to the courts, absent evidence which affirmatively establishes that the party expressly agreed to arbitrate a dispute. *Harriman*, 213 A.D. 2d 159, 163.

## PETITIONER IS NOT A SIGNATORY TO ANY ARBITRATION AGREEMENT WITH RESPONDENTS

The requirement in TNS for a clear and unequivocal agreement to arbitrate applies with equal force in this case. Here there is absolutely no agreement in force executed by Petitioner to arbitrate. Petitioner's Form U-4 which contained an agreement by Petitioner to arbitrate was terminated when Pristine Securities filed the Form U-5 for Petitioner.

7

Equally, the NASD Code of Arbitration requires that parties in customer arbitration must consent in writing to arbitrate before the NASD may entertain any such matter.

Rule 10301(a) of NASD's Code of Arbitration sates as follows:

> Any dispute, claim or controversy eligible for submission .....between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, *as provided by any duly executed and enforceable written contract* or upon demand of the customer *(Italics Mine)*..........

As NASD's own rules require, customer arbitration can only be heard by the NASD if there is a pre-dispute agreement in place.

However, there is no similar or separate language calling for a *"duly executed and enforceable written contract"* for industry member arbitration (i.e., arbitration between member firms and/or associated persons) in the NASD Code of Arbitration because industry members who register with the NASD by filing a Form U-4 consent *a priori* to industry arbitration per Section 15A(5) of the Form U-4.

Nevertheless, and as explained above, Petitioner's Form U-4 and consent to arbitrate was terminated when he resigned and a Form U-5 was filed on his behalf by Pristine Securities.

## THE MATTER IS NOT ARBITRABLE BECAUSE THE CLAIMS ASSERTED ARE NOT IN CONNECTION WITH THE BUSINESS OF AN NASD MEMBER FIRM. IN ADDITION, RESPONDENTS ARE NOT MEMBERS OF NASD.

Rule 10101 of NASD Code of Procedure – Matters Eligible for Submission - states as follows regarding matters that are eligible for arbitration:

> This Code of Arbitration is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By-Laws of the Association for the arbitration of any

8

> dispute, claim or controversy arising *out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member,* ...........
> (a) between or among members[2];
> (a) between or among members and associated person;
> (b) between or among members or associated person and the public, or others; and ....... *(Italics Mine)*

The claims asserted in the instant arbitration have nothing to do with the business of a NASD member. Moreover, the arbitration has nothing to do with the employment of Petitioner by an NASD member firm. The claims relate to the business of Pristine Capital, a non-NASD member. Alternatively, the claims relate to the activities of Petitioner while he was employed as the CEO of Pristine Capital, a non NASD member.

Specifically, the Statement of Claim alleged the following causes of action:

<u>First Cause of Action – Conversion</u>

The complaint alleged that Petitioner converted $250,000.00 of funds belonging to Pristine Capital, a non-NASD member.

<u>Second Cause of Action – Conversion of Intellectual Property.</u>

The complaint alleged that Petitioner converted intellectual property belonging to Pristine Capital, a non-NASD member.

<u>Third Cause of Action – Inducement of Breach of Contract and Covenants Not to Compete, Not to Solicit and Not to Disclose Confidential Information.</u>

---

[2] *The term "NASD member" is defined as any broker or dealer admitted to membership in NASD. See Article 1(v) of the NASD By-Laws. Neither Pristine Capital nor Capra is a broker or dealer admitted to membership in NASD. While Capra may qualify as an "Associated Person" of Pristine Securities by virtue of his indirect ownership interest in Pristine Securities, Capra is certainly not a member of the NASD as the term "member" is defined in the NASD By-Laws.*

9

The allegation relates to breach of contract and non-compete covenants that inure to the benefit of Pristine Capital - a non-NASD member.

Fourth Cause of Action – Refusal to Abide by NASD Supervisory Regulatory Rules with the Intent of Harming MTC[3]

The allegation appears to refer to harm to Pristine Securities, a member of NASD, which is not a party to the instant arbitration.

Fifth Cause of Action – Unfair Competition

The alleged unfair competition was against Pristine Capital, a non-NASD member.

Sixth Cause of Action – Faithless Servant

The alleged faithless servant conduct by Petitioner was against Pristine Capital, a non-NASD member.

Seventh Cause of Action – Breach of Duty of Loyalty

The duty of loyalty alleged to have been breached was owed to Pristine Capital, a non-NASD member.

Eight Cause of Action – Tortuous Interference with Prospective Economic Advantage

The alleged interference was in connection with the business of Pristine Capital, a non-NASD member.

*See Exhibit 1 above.*

---

[3] *The Statement of Claim refers to Pristine Securities Inc. as Matertrader.com or MTC.*

Since the allegations are all in connection with the business of Pristine Capital and since the redress sought are for or will inure to the benefit of Pristine Capital, a non-NASD member, the claims are ineligible for NASD arbitration.

### PETITIONER'S "ASSOCIATED PERSON" STATUS IN REGARD TO HIS OWNERSHIP INTEREST IN PRISTINE SECURITIES DOES NOT *IPSO FACTO* SUBJECTS HIM TO NASD ARBITRATION.

As discussed above, the NASD By-Laws, include persons who directly or indirectly control a broker-dealer, in its definition of "a person associated with a member" or "associated person of a member." Also as discussed above, associated persons are included in the category of persons who are required to submit their claims before NASD. Petitioner is arguably an "associated person" of Pristine Securities because he still indirectly owns 47% of Pristine Securities. However, Pristine Securities is not a party to the instant NASD Arbitration.

However, even though Petitioner owns 47% of Pristine Securities, he is basically a silent shareholder or capital contributor or participant who has nothing to do with the management of Pristine Securities.[4] Moreover, Petitioner has since quit his association with Pristine Capital and Pristine Securities. His Form U-5 has been filed and accepted by the NASD.

Significantly, courts that have considered whether persons "associated" with members of an exchange and therefore must arbitrate a dispute have required *additional* evidence other than the exchange rule itself to show that the "associated person" consented to arbitrate. *See Kessler v. NASD*, Index No. 119593/00 (Sup. Ct. N.Y. Co. 2001(Lebedeff, J)(copy annexed hereto). *See, Haviland v. Goldman Sachs & Co.*, 947 F. 2d 601 (2d Cir.1991); *Tullis v. Kholmeyer & Co.*, 551 F.2d 632 (5th Cir. 1977); *Coenen v. R.W.*

---

[4] *The Court is invited to review Rule 1060(a)(3) of the NASD Membership and Registration which specifically exempts from registration persons whose role in a broker-dealer is limited solely to equity ownership.*

*Pressprich & Co.*, 453 F.2d 1209 (2d Cir.) cert. denied, 406 U.S. 949 (1972); *Cullen v. Paine, Weber, et al.*, 587 F. Supp. 1520 (N.D. Ga. 1984).

In the instant case, Petitioner's consent to arbitrate matters was withdrawn when Petitioner resigned and Pristine Securities filed a Form U-5 for Petitioner.

The First Department has also reversed a lower court's decision compelling arbitration, and held that corporate entities which are not members of the NASD, notwithstanding a corporate affiliation between the NASD member and the non-NASD member, does not, by itself, make the NASD member's agreement to submit claims for arbitration against itself enforceable against the non-NASD members. *See CDC Capital Inc. v. Gershon*, 723 N.Y.S. 2d 166 (1st Dept. 2001).

## SUMMARY

The New York Courts and the NASD rules require that that there must be an agreement to arbitrate before a person can be compelled to arbitrate. Petitioner had an agreement to arbitrate matters arising out of the business of Pristine Securities, which is not a party to the NASD Arbitration. The agreement was terminated when Petitioner resigned and a Form U-5 was filed on his behalf by Pristine Securities. Therefore, Petitioner has not entered into any agreement with Respondents to arbitrate and the claims sought to be arbitrated relate to the business of Pristine Capital which is not a member of the NASD.

## CONCLUSION

Given that Petitioner (i) is not a party to any agreement to arbitrate and has not entered into any agreement to arbitrate; (ii) has not otherwise agreed to arbitrate any disputes with Respondents; (iii) is not a member of the NASD or otherwise licensed; (iv) is not a sole proprietor, partner, officer, director or branch manager of an NASD member firm and (v) is not engaged in the investment banking or securities business, the NASD cannot mandate Petitioner to arbitrate claims against him. *See First Options of Chicago v. Kaplan and MK Investments,* 514 U.S. 938 (1995) (for the holding that where parties did

not execute a pre-dispute agreement or otherwise clearly express an intention to arbitrate their controversy, no court is going to make them do so). Accordingly, Petitioner, Velez is entitled to an Order permanently staying the arbitration of claims asserted against him by Respondents, and enjoining the NASD from exercising jurisdiction over Petitioner and/or requiring Petitioner to arbitrate.

For all the above reasons, this Court should grant the relief sought in the Verified Petition in all respects and permanently stay the NASD Arbitration against Petitioner, together with such other and further relief as this Court may deem just and proper.

Respectfully submitted this 30th day of Sept 2007

By_____
Franklin Ogele, Esq.
New York Bar Admission #2364974
Attorney for Petitioner
One Gateway Center - Suite 2600
Newark, NJ 07102
Office: 973 645 0565/Fax:973 923 7890
Cell 973 277 4239

Velezmoflaw1

13

NOTE - EXHIBIT 1 - TO THE MEMORANDUM OF LAW OF VELEZ MOTION TO STAY IS NOT AGAIN HERE BECAUSE IT IS ALREADY ATTACHED AS AN EXHIBIT TO THE REMAND MEMORANDUM OF LAW

# EXHIBIT 2 - TO THE MEMORANDUM OF LAW OF VELEZ MOTION TO STAY

### 1060. Persons Exempt from Registration

(a) The following persons associated with a member are not required to be registered with the Association:

(1) persons associated with a member whose functions are solely and exclusively clerical or ministerial;

(2) persons associated with a member who are not actively engaged in the investment banking or securities business;

(3) persons associated with a member whose functions are related solely and exclusively to the member's need for nominal corporate officers or for capital participation; and

(4) persons associated with a member whose functions are related solely and exclusively to:

(A) effecting transactions on the floor of a national securities exchange and who are registered as floor members with such exchange;

(B) transactions in municipal securities;

(C) transactions in commodities; or

(D) transactions in security futures, provided that any such person is registered with a registered futures association.

(b) Member firms, and persons associated with a member, may pay to nonregistered foreign persons transaction-related compensation based upon the business of customers they direct to member firms if the following conditions are met:

(1) the member firm has assured itself that the nonregistered foreign person who will receive the compensation (the "finder") is not required to register in the U.S. as a broker/dealer nor is subject to a disqualification as defined in Article III, Section 4 of the Association's By-Laws, and has further assured itself that the compensation arrangement does not violate applicable foreign law;

(2) the finders are foreign nationals (not U.S. citizens) or foreign entities domiciled abroad;

(3) the customers are foreign nationals (not U.S. citizens) or foreign entities domiciled abroad transacting business in either foreign or U.S. securities;

(4) customers receive a descriptive document, similar to that required by Rule 206(4)-3(b) of the Investment Advisers Act of 1940, that discloses what compensation is being paid to finders;

(5) customers provide written acknowledgment to the member firm of the existence of the compensation arrangement and that such acknowledgment is retained and made available for inspection by the Association;

(6) records reflecting payments to finders are maintained on the member firm's books and actual agreements between the member firm and persons compensated are available for inspection by the Association; and

(7) the confirmation of each transaction indicates that a referral or finders fee is being paid pursuant to an agreement.

[Amended by SR-NASD-80-01 eff. June 26, 1980; amended by SR-NASD-88-12 eff. Nov. 2, 1988; amended by SR-NASD-94-51 eff. Feb. 15, 1995; amended by SR-NASD-95-39 eff. Aug. 20, 1996; amended by SR-NASD-98-86 eff. Nov. 19, 1998; amended by SR-NASD-2002-40 eff. Oct. 15, 2002.]

# BY-LAWS OF NASD REGULATION, INC.
## ARTICLE I
### DEFINITIONS

When used in these By-Laws, unless the context otherwise requires, the term:

(a) "Act" means the Securities Exchange Act of 1934, as amended;

(b) "Board" means the Board of Directors of NASD Regulation;

(c) "broker" shall have the same meaning as in Section 3(a)(4) of the Act;

(d) "Commission" means the Securities and Exchange Commission;

(e) "day" means calendar day;

(f) "dealer" shall have the same meaning as in Section 3(a)(5) of the Act;

(g) "Delaware law" means the General Corporation Law of the State of Delaware;

(h) "Delegation Plan" means the "Plan of Allocation and Delegation of Functions by NASD to Subsidiaries" as approved by the Commission, and as amended from time to time;

(i) "Director" means a member of the Board;

(j) "district" means a district established by the Board pursuant to Article VIII, Section 8.1 of these By-Laws;

(k) "District Committee" means a District Committee elected pursuant to Article VIII of these By-Laws;

(l) "District Director" means an NASD Regulation staff member who heads a district office;

(m) "District Nominating Committee" means a District Nominating Committee elected pursuant to Article VIII of these By-Laws;

(n) "district office" means an office of NASD Regulation located in a district;

(o) "Executive Representative" means the executive representative of an NASD member appointed pursuant to Article IV, Section 3 of the NASD By-Laws;

(p) "Independent Agent" means a corporation or entity selected by the Secretary of NASD Regulation to assist NASD Regulation with nomination and election procedures under Articles VI and VIII of these By-Laws and the representatives of such corporation or entity;

(q) "Industry Director" or "Industry member" means a Director (excluding the President of NASD Regulation and the Chief Executive Officer of NASD) or a National Adjudicatory Council or committee member who (1) is or has served in the prior three years as an officer, director, or employee of a broker or dealer, excluding an outside director or a director not engaged in the day-to-day management of a broker or dealer; (2) is an officer, director (excluding an outside director), or employee of an entity that owns more than ten percent of the equity of a broker or dealer, and the broker or dealer accounts for more than five percent of the gross revenues received by the consolidated entity; (3) owns more than five percent of the equity securities of any broker or dealer, whose investments in brokers or dealers exceed ten percent of his or her net worth, or whose ownership interest otherwise permits him or her to be engaged in the day-to-day management of a broker or dealer; (4) provides professional services to brokers or dealers, and such services constitute 20 percent or more of the professional revenues received by the Director or member or 20 percent or more of the gross revenues received by the Director's or member's firm or partnership; (5) provides professional services to a director, officer, or employee of a broker, dealer, or corporation that owns 50

percent or more of the voting stock of a broker or dealer, and such services relate to the director's, officer's, or employee's professional capacity and constitute 20 percent or more of the professional revenues received by the Director or member or 20 percent or more of the gross revenues received by the Director's or member's firm or partnership; or (6) has a consulting or employment relationship with or provides professional services to the NASD, NASD Regulation, Nasdaq, NASD Dispute Resolution, or Amex (and any Predecessor), or has had any such relationship or provided any such services at any time within the prior three years;

(r) "NASD" means the National Association of Securities Dealers, Inc.;

(s) "NASD Board" means the NASD Board of Governors;

(t) "NASD Dispute Resolution" means NASD Dispute Resolution, Inc.;

(u) "NASD member" means any broker or dealer admitted to membership in the NASD;

(v) "NASD Regulation" means NASD Regulation, Inc.;

(w) "National Adjudicatory Council" means a body appointed pursuant to Article V of these By-Laws.

(x) "National Nominating Committee" means the National Nominating Committee appointed pursuant to Article VII, Section 9 of the NASD By-Laws;

(y) "Non-Industry Director" or "Non-Industry member" means a Director (excluding the President of NASD Regulation and the Chief Executive Officer of NASD) or a National Adjudicatory Council or committee member who is (1) a Public Director or Public member; (2) an officer or employee of an issuer of securities listed on Nasdaq or Amex, traded in the over-the-counter market; or (3) any other individual who would not be an Industry Director or Industry member;

(z) "person associated with a member" or "associated person of a member" means: (1) a natural person who is registered or has applied for registration under the Rules of the Association; (2) a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with the NASD under these By-Laws or the Rules of the Association; and (3) for purposes of Rule 8210, any other person listed in Schedule A of Form BD of a member.

(aa) "Public Director" or "Public member" means a Director or National Adjudicatory Council or committee member who has no material business relationship with a broker or dealer or the NASD, NASD Regulation, or Nasdaq;

(bb) "Regional Nominating Committee" means a Regional Nominating Committee that nominates to the National Nominating Committee a candidate for the National Adjudicatory Council to represent a geographical region as provided in Article VI of these By-Laws; and

(cc) "Rules of the Association" or "Rules" means the numbered rules set forth in the NASD Manual beginning with the Rule 0100 Series, as adopted by the NASD Board pursuant to the NASD By-Laws, as hereafter amended or supplemented.

(dd) "Floor Governor" or "Amex Floor Governor" means a Floor Governor of Amex elected pursuant to Article I, Section 01(a) of the Amex By-Laws;

(ee) "Nasdaq-Amex" means Nasdaq-Amex Market Group, Inc.;

(ff) "Amex" means American Stock Exchange LLC;

(gg) "Amex Board" means the Board of Governors of Amex;

Art. I

©2001, National Association of Securities Dealers, Inc.

than the next meeting of the NASD Board. The NASD Board may order the Applicant and the Department to file briefs in connection with review proceedings pursuant to this paragraph.

### (d) Decision of NASD Board, Including Remand

After review, the NASD Board may affirm, modify, or reverse the proposed written decision of the National Adjudicatory Council. Alternatively, the NASD Board may remand the membership proceeding with instructions. The NASD Board shall prepare a written decision that includes all of the elements described in Rule 1015(j)(2).

### (e) Issuance of Decision

The NASD Board shall serve its written decision on the Applicant within 15 days after the meeting at which it conducted its review. The decision shall constitute the final action of the Association for purposes of SEC Rule 19d-3, unless the NASD Board remands the membership proceeding.

[Adopted by SR-NASD-97-28 eff. Aug. 7, 1997; amended by SR-NASD-97-81 eff. Jan. 16, 1998; amended by SR-NASD-99-67 eff. Nov. 15, 2000.]

## 1017. Application for Approval of Change in Ownership, Control, or Business Operations

### (a) Events Requiring Application

A member shall file an application for approval of any of the following changes to its ownership, control, or business operations:

(1) a merger of the member with another member, unless both are members of the New York Stock Exchange, Inc. or the surviving entity will continue to be a member of the New York Stock Exchange, Inc.;

(2) a direct or indirect acquisition by the member of another member, unless the acquiring member is a member of the New York Stock Exchange, Inc.;

(3) a direct or indirect acquisition of substantially all of the member's assets, unless the acquirer is a member of the New York Stock Exchange, Inc.;

(4) a change in the equity ownership or partnership capital of the member that results in one person or entity directly or indirectly owning or controlling 25 percent or more of the equity or partnership capital; or

(5) a material change in business operations as defined in Rule 1011(i).

### (b) Filing and Content of Application

(1) The member shall file the application with the Department at the district office in the district in which the member's principal place of business is located. If the application involves a merger between members with principal places of business in two or more districts, the application shall be filed and processed by the district office wherein the surviving firm's principal place of business will be located.

(2) The application shall describe in detail the change in ownership, control, or business operations and include a business plan, pro forma financials, an organizational chart, and written supervisory procedures reflecting the change.

(A) If the application requests approval of a change in ownership or control, the application also shall include the names of the new owners, their percentage of ownership, and the sources of their funding for the purchase and recapitalization of the member.

NOTE:
EXHIBIT 3 - TO THE MEMORANDUM OF LAW OF VELEZ MOTION TO STAY IS NOT ATTACHED AGAIN HERE BECAUSE IT IS ALREADY ATTACHED AS AN EXHIBIT TO THE REMAND MEMORANDUM OF LAW