```
                                                                    1
    76jzpri1
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   PRISTINE CAPITAL HOLDINGS,
3   INC.,
4
4              Plaintiff,
5
5        v.                                    07 CV 5720 (WHP)
6
6   VELEZ CAPITAL MANAGEMENT, LLC,
7   et al.,
7
8              Defendants.
8
9   ------------------------------x
9
10                                         June 19, 2007
10                                         5:30 p.m.
11
11  Before:
12
12              HON. WILLIAM H. PAULEY III,
13
13                                         District Judge
14
14                       APPEARANCES
15
15  DAN A. DRUZ
16       Attorney for Plaintiff
16
17
17  LILLING & LILLING PLLC
18       Attorneys for Defendants
18  BY:  BRUCE E. LILLING
19
20
21
22
23
24
25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

```
                                                                    2
    76jzpri1
1            THE COURT:  Good afternoon.  Please be seated.
2            (Case called)
3            THE DEPUTY CLERK:  Would counsel for the plaintiff
4   please state his appearance for the record.
5            MR. DRUZ:  Yes.  Good evening, your Honor.  I'm Dan
6   Druz.  I'm an attorney who is a member of the Bar of this
7   Court, and my office is located in Manasquan, New Jersey.  How
8   are you, your Honor?
9            THE COURT:  Fine.  Good afternoon, Mr. Druz.
10           THE DEPUTY CLERK:  Counsel for the defendant?
11           MR. LILLING:  Yes, your Honor.  Bruce Lilling from
```

```
12        Lilling & Lilling PLLC, and sitting to my right is Oliver
13        Velez. He's the principal of the corporate defendant, and he's
14        also named as an individual defendant. And the other two
15        people here are law students who are interning at our office
16        this summer, and they're here to see how the federal court
17        works. So I hope that that presents no difficulty for you.
18                 THE COURT: All right. Good afternoon, Mr. Lilling.
19        I hope that we can show them that we're functioning on all
20        cylinders.
21                 All right, Mr. Druz, you have an application for a
22        temporary restraining order. Have all the defendants been
23        served?
24                 MR. DRUZ: Your Honor, the three defendant employees
25        or employee defendants, as I refer to them in the complaint,
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                     3
```
         76jzpri1
1        I'm not certain if proper service has been made. One, there
2        was an attorney involved for a Florida resident and he's not
3        indicated to me whether whether or not he would be representing
4        him in this matter, and I haven't heard from the other two
5        either. So I can't tell you that they have been, with
6        certainty.
7                 THE COURT: All right. Tell me why it is you believe
8        you're entitled to emergency relief.
9                 MR. DRUZ: Sure. Your Honor, let me cut right to it.
10       I know you've had a long day. And if you look at exhibit
11       seven, which was annexed to the declaration of Anthony S.
12       Nunez, there's three declarations, and I numbered the exhibits
13       sequentially, even though they're with different declarants.
14       The one in particular that I'm looking at is a Mr. Nunez's
15       declaration, and attached to it is an advertisement or
16       promotional material for a seminar that was held. It was held
17       a couple weeks ago by Mr. Velez and VCM Capital. And that
18       promotional material is really the nub of our case, at least
19       our application for the temporary restraining order, because
20       it's rife with misinformation that all leads back to Pristine
21       Capital Holdings, my client. Pristine holds many trademarks,
22       but most of them are Pristine, Pristine.com, Pristine, the
23       Pristine Method, there's a whole series of them.
24                THE COURT: Does your client own the mark, The
25       Pristine Method?
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                     4
```
         76jzpri1
1                 MR. DRUZ: Well, I was surprised -- I saw the
2        defendant's response at 3:30 today, and I was surprised to see
3        his challenge. And I checked back with my headquarters. I
4        wasn't able to get ahold of Pal Goldstein, the Washington firm
5        that handles the filings, but I was assured that yes, in fact,
6        Pristine Capital Holdings does own Pristine Capital Management,
7        which is listed on the particular documents related to the
8        service marks, and that all of the appropriate notices have
9        been filed with the trademark office. I can't tell you any
10       more than that because I couldn't get the attorney from Pal
11       Goldstein on the phone. I could only tell you what I was told
12       by my client. But yes, Pristine Capital Holdings -- Pristine
13       Capital Management was the predecessor firm to Pristine Capital
```

```
14        Holdings, and they purchased the records.
15                 (Continued on next page)
16
17
18
19
20
21
22
23
24
25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                        5

```
76JFPRIC
 1              THE COURT:  Is there any evidentiary support here in
 2     the papers before me for this chain of corporate ownership?
 3              MR. DRUZ:  No, your Honor, there is not.  There is
 4     not.  I was surprised at the challenge.  I had -- Mr. Velez is
 5     here today.  I don't have them, but Mr. Velez is here today.  I
 6     think he would be surprised as well there would be any
 7     challenge to Pristine Capital being the rightful owner of these
 8     service marks.
 9              Should I continue?
10              THE COURT:  Yes.
11              MR. DRUZ:  Okay, thank you.  So Pristine is a
12     registered mark, Pristine, the Pristine Method is a registered
13     mark and if you look at page 2 of the exhibit, I believe your
14     law clerk has given to you, it's a two-column page.
15              THE COURT:  Which exhibit is it?
16              MR. DRUZ:  This is Exhibit 7 annexed to Anthony
17     Nunez's declaration, Anthony Nunez being executive of the
18     company.  And the first page you see would be -- do you have
19     this on the first page?
20              THE COURT:  I have something that looks like it was
21     Exhibit 7, but then it was made into an 8, and it's a one-page
22     e-mail.
23              MR. DRUZ:  That is not the exhibit that I'm
24     referencing.  The exhibit I'm referencing is Exhibit 7 attached
25     to Anthony Nunez's declaration.  You're looking at one of the
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                        6

```
76JFPRIC
 1     exhibits attached to my own declaration.
 2              THE COURT:  All right.  I've got the Nunez declaration
 3     in front of me now.
 4              MR. DRUZ:  Okay, your Honor, thank you.  If you turn
 5     to Exhibit 7 --
 6              THE COURT:  I'm looking at it.
 7              MR. DRUZ:  So the first page looks like this, Judge,
 8     and then the second page is the page I would like to direct
 9     your attention to.
10              In the right-hand column, this promotional material
11     talks about Oliver Velez.  And if you go down to the third
12     paragraph, it starts off by saying that Mr. Velez is
13     internationally known for founding and growing Pristine Capital
14     Holdings.  Pristine is also a registered service mark.  You
15     know, we have a global brand with Pristine Capital Holdings.
```

```
16    We don't disagree with Mr. Velez that he's internationally
17    known, and if you continue in that paragraph, it says that he
18    grew that company over the last twelve years into the country's
19    premier educational institution for investors and self-directed
20    retail traders.  Again, we do not disagree with him.  We
21    wholeheartedly agree.
22              But then it starts to veer off a little bit.  It says
23    that as Pristine's chairman, and I don't mean to be repetitive,
24    but Pristine is a registered service mark, and CEO for twelve
25    years, he decided to turn his full attention to professional
```
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    7

    76JFPRIC
```
1     trading area.  Now, Judge, I don't know how much you want me to
2     go into about the facts about this ancillary securities
3     industry, but --
4               THE COURT:  Now, I'm just waiting to hear the
5     pertinent facts that you say support an application for
6     emergency relief.
7               MR. DRUZ:  Okay, I'm getting to them, Judge.
8               THE COURT:  Okay, well, we've been going at it for ten
9     minutes.  All right?  Why don't you jump right to it?
10              MR. DRUZ:  All right.  Judge --
11              THE COURT:  Let me jump right to it.
12              MR. DRUZ:  Yes.
13              THE COURT:  Isn't it the content that you claim is
14    purportedly being misappropriated here?
15              MR. DRUZ:  Well, that's true, but that's not the
16    purpose of this application.  The purpose of this application
17    is to show that Pristine, the registered mark, is being used to
18    confuse the public in order to enable Mr. Velez and VCM --
19              THE COURT:  Okay, what other than Mr. Velez saying
20    that he served as Pristine's chairman, what else is it that you
21    say constitutes misappropriation of the Pristine mark?  Because
22    I could tell you right now I'm not persuaded by that one.
23              MR. DRUZ:  It's the -- within the content of this
24    promotional material, it refers to Pristine as being an entity
25    that does things that it does not do.  And so the mark --
```
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    8

    76JFPRIC
```
1               THE COURT:  Wait.  You've taken me to the third
2     paragraph in the second column.  You said something like you
3     agreed with the first two statements in that paragraph, but
4     then told me it veered off.
5               MR. DRUZ:  That's correct.
6               THE COURT:  Well --
7               MR. DRUZ:  Because the Pristine mark, according to the
8     registration with the Trademark Office, is only to be used in
9     certain methods.  With seminars, with DVD's that tape those
10    seminars and with certain other publications and media, and
11    what's happening here is Mr. Velez is indicating that the
12    Pristine method, another registered mark of the company, and
13    Pristine in particular, functions in a different way than what
14    the mark is going to prove.
15              THE COURT:  Isn't he simply saying that he's the
16    former chief executive of Pristine, and isn't that fair use?
17              MR. DRUZ:  Well, your Honor, I guess I disagree with
```

```
18   that.  Because I don't think it can be fair use --
19          THE COURT:  You don't think he can say -- he was the
20   former CEO, right?
21          MR. DRUZ:  Agreed.
22          THE COURT:  You don't think he can say that?
23          MR. DRUZ:  I don't think he can say that he trained
24   60,000 people in what appears --
25          THE COURT:  Where does he say that?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

                                                                            9

```
     76JFPRIC
 1          MR. DRUZ:  Says that in the first paragraph.  Says in
 2   the first paragraph on the fifth line down.
 3          THE COURT:  Right.  How is that trademark
 4   infringement?
 5          MR. DRUZ:  If you go through and see where he refers
 6   to books that he has written as it relates to those seminars
 7   and you go to those books, they, too, refer to pristine.com and
 8   to the Pristine registered mark, but in fact, the 60,000
 9   traders were not -- the 60,000 persons who were supposedly
10   educated in those seminars under the Pristine method were not
11   in fact educated in that manner.  The number is incorrect.  The
12   process that was used is incorrect.
13          THE COURT:  How is that trademark infringement, which
14   is the gravamen of your claim to come into this magnificent
15   courthouse?
16          MR. DRUZ:  Your Honor, the word "Pristine," the mark
17   "Pristine" has a certain quality that has become associated
18   with it over time, and that when a trader in that trading
19   community sees an adverse promotional material that says
20   "Pristine" on it, he associates a level of honesty, he
21   associates a variety of quality factors with it.  This
22   promotional material is completely inaccurate as to those
23   qualities.
24          THE COURT:  Just explain to me how the defendants are
25   using the same or similar mark to Pristine other than through
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

                                                                           10

```
     76JFPRIC
 1   their fair use references that Velez, the defendant, was the
 2   former CEO of Pristine.
 3          MR. DRUZ:  Admittedly, I can't get past your -- I'm
 4   not going to call it a ruling, but your assumption that it's
 5   fair use.
 6          THE COURT:  It's not a ruling.  I'm asking about the
 7   law.  You're here alleging trademark infringement.  Where is
 8   it?
 9          MR. DRUZ:  And I'm saying that every reference to
10   Pristine that's made in here is an inaccurate one, and thereby
11   diminishes the value of that mark.
12          THE COURT:  Where on this page does Velez use the term
13   "the Pristine Method"?
14          MR. DRUZ:  He doesn't.  He uses just the registered
15   mark Pristine.
16          THE COURT:  Where does he use the registered mark
17   Pristine?
18          MR. DRUZ:  He does not put the registered mark next to
19   it, but he uses the word "Pristine" at the third paragraph and
```

```
20   again --
21             THE COURT:  Line 2?
22             MR. DRUZ:  Yes, Pristine Capital Holdings.
23             THE COURT:  He says that he's the former CEO of
24   Pristine Capital Holdings.  You think that that's trademark
25   infringement?
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

11

76JFPRIC
```
 1             MR. DRUZ:  And there's another place, Judge.
 2             THE COURT:  You think that's trademark infringement?
 3             MR. DRUZ:  Where he refers to Pristine and he
 4   associates all of these, I'm going to call them negative
 5   services and negative -- negative for us in terms of the manner
 6   in which he's conducting his business, yes.
 7             THE COURT:  How is it negative?  He's saying that he
 8   founded and grew Pristine Capital into one of the company's
 9   premier educational institutions.  How is that negative?
10   Assuming that it's not fair use, which is an assumption that I
11   think you can't make.
12             MR. DRUZ:  It's negative in the totality of the
13   content of this promotional material, because it misstates what
14   it is that the Pristine -- what it is that Pristine does, it
15   misstates those things that are associated with that mark.
16             THE COURT:  I thought the thrust of your complaint in
17   this case was that Mr. Velez took the Pristine method, slapped
18   a new name on it, called Trade for Life, and went out and is
19   marketing and selling Trade for Life.
20             MR. DRUZ:  Yes, that would go to some of the other
21   claims, your Honor.  I hadn't asserted that as part of this
22   particular application.
23             THE COURT:  Okay.  So let me just see if I have this.
24   The only basis for you to be here in federal court is if you
25   have a federal trademark claim, right?
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

12

76JFPRIC
```
 1             MR. DRUZ:  Yes.
 2             THE COURT:  All right.  Is there anything else to
 3   support your federal trademark claim, other than the reference
 4   to Pristine Capital Holdings in the third paragraph of Exhibit
 5   7 and the statement that after serving as Pristine's chairman
 6   and CEO for twelve years, Mr. Velez decided to turn his full
 7   attention to the professional trading arena?
 8             MR. DRUZ:  Yes, Judge.  The references to the
 9   seminars, which could only have occurred at Pristine, because
10   Mr. Velez went from Pristine to VCM with no break and no other
11   employer, are inaccurate.  And so they're violative of,
12   (a)(1)(a) and (b).  Section 1125(a)(1), subparagraphs (a) and
13   (b).
14             THE COURT:  Forgive me if I'm not getting it,
15   Mr. Druz, but in your memorandum of law at page 5, you say of
16   Mr. Velez, quote, "He's likely seeing the same teacher,
17   teaching the same program, using the same manual, only with a
18   different cover!"  Close quote.  That's the customer confusion
19   that you describe in your memorandum of law, isn't it?
20             MR. DRUZ:  Yes, I did pick out that point, yes, sir.
21             THE COURT:  How is that trademark infringement?
```

```
22            MR. DRUZ: Well, I would not rely so much on that as I
23   would on the attachment to the declaration, and where
24   there's --
25            THE COURT: We're back to Exhibit 7?
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

76JFPRIC

```
 1            MR. DRUZ: Yes, sir. Where there's comments like,
 2   "They proved how potent they are by providing a big score,
 3   high-octane trading style," that "this method, microtrading has
 4   the potential to serve as a solution to many of the world's
 5   social ills."
 6            The whole tenor of this is now associated with the
 7   trademark Pristine, and it's a piece that's beyond puffery, so
 8   now people will associate this piece of advertising, the
 9   promotional piece, this highly deceptive one, with Pristine.
10   Mr. Velez in this advertising material relies on his background
11   with Pristine, and so there's a connection that's to be made
12   between Velez Capital Management and Pristine that should not
13   be made, but if you read through the totality of this
14   promotional piece which attributes, has these wild claims with
15   it, that is not a good thing for maintaining the strength of
16   our mark.
17            It's associating our mark unwillingly with a --
18            THE COURT: If Mr. Velez taught 60,000 people around
19   the world how to day trade or whatever it is, why shouldn't he
20   be able to say that?
21            MR. DRUZ: He should be able to say it, but he
22   shouldn't infer that it was not with Pristine or that it was
23   somehow with this competitive firm. He shouldn't pump up that
24   product at the expense of Pristine. He's only been at --
25            THE COURT: How is that trademark infringement?
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

76JFPRIC

```
 1            MR. DRUZ: Because my understanding of the statute,
 2   with particularly the section 1125(a)(1)(a) and (b), in
 3   commercial advertising and promotion misrepresenting the
 4   nature, characteristics, qualities or geographic origin of his
 5   or her or another person's goods, services or commercial
 6   activities, in this case the services, various names for which
 7   we've obtained service marks for.
 8            THE COURT: Anything else?
 9            MR. DRUZ: No, sir. Thank you.
10            THE COURT: Mr. Lilling, do you want to be heard?
11            MR. LILLING: Yes, just briefly, your Honor. I must
12   tell you I read this complaint several times and I don't have a
13   clue what his complaint is. This is the first time now I'm
14   starting to get an inkling that he's not talking about
15   trademark infringement or copyright infringement, but he's
16   talking about false advertising.
17            Be that as it may, let me go through a couple of quick
18   points. On this Exhibit 7, if you look at the first page,
19   which he glossed over quickly --
20            THE COURT: Hold on.
21            MR. LILLING: You'll see that he has his new company
22   name there pretty prominently, his personal name and his
23   trademark Trade for Life. Now, I'll concede that if he had put
```

```
24    Pristine there, that would be a classic case of trademark
25    infringement.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    15
    76JFPRIC
```
 1              Now, as we get into the text, there are two versions
 2    of this document.  This is the one that was circulated without
 3    Mr. Velez' consent and has a minor error in it, and it's
 4    different from the one that appears on his website.  In
 5    particular, it's in the second column in the first paragraph,
 6    where it refers to the 60,000 traders, and it says, "His Trade
 7    for Life seminars and five-day" --
 8              THE COURT:  I see it.
 9              MR. LILLING:  That's the error, because it was not
10    supposed to say his Trade for Life seminars, because under that
11    name he didn't train 60,000 people.  This was put out by
12    somebody who put it out too quickly without him checking it.
13    If you look at the same version on his website, you'll see that
14    that language has been massaged so it doesn't refer to Trade
15    for Life, but merely refers to the fact that Mr. Velez himself
16    taught 60,000 people, which, as you had suggested, there's
17    nothing wrong with that if in fact he did, and in point of
18    fact, Mr. Velez taught approximately 60,000 people, whereas
19    Pristine taught approximately 88,000.  Though, of course, there
20    is some overlap there.
21              I don't really have much more to say on the trademark
22    infringement issue, because you said it better than me, that
23    it's fair use.  But I would like to mention on the ownership
24    issue, I have here a copy of a printout from the New York State
25    Department of State from yesterday which says that Pristine
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    16
    76JFPRIC
```
 1    Capital Management is an inactive company --
 2              THE COURT:  You don't have anything more recent than
 3    yesterday?
 4              MR. LILLING:  Sorry.  I didn't find out about the case
 5    until yesterday morning.  Mr. Velez thinks it went inactive in
 6    the year 2000, but -- oh, we do have something from today, your
 7    Honor.  We went on the Patent Office website and for every
 8    single one of the registrations he cites, we have a printout
 9    from the Patent Office saying no assignment has been recorded.
10    This has today's date on it, with a heading for the U.S. Patent
11    Office.  So I don't understand the comment that they're in the
12    process of doing the paperwork, but I don't know that it really
13    makes any difference, because there can't be trademark
14    infringement unless the accused is using the alleged trademark
15    in some way, shape or form, which we're not doing.
16              So, in fact, we don't even have an objection to an
17    injunction on using the Pristine method because we don't use
18    it.  We never use it and we have no intention of using it.
19    However, we do think we should be entitled to the fair use of
20    saying that Mr. Velez previously worked at Pristine Capital
21    Holdings, but that's not trademark use and there's no case that
22    has ever held that as trademark use.
23              We also have the issue that if we read the first
24    paragraph of his requested TRO, he's clearly asking for relief
25    under the copyright law, because he's asking that materials not
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

76JFPRIC

1  be distributed, and you'll notice how they only give you the
2  first page of the two PowerPoint presentations.  One of the
3  reasons they did that is because they didn't want you to look
4  at both of them, because if you took both of them and looked at
5  them side by side, you'll find out that there's no
6  similarities.  But even still, your Honor, they don't have a
7  copyright certificate, so we don't even get in the door on
8  copyright.
9          THE COURT:  They don't have a copyright claim in the
10 complaint.
11         MR. LILLING:  Well, they talk about taking the
12 manuals.  I mean, they don't refer to the copyright law, but if
13 you look at paragraph 40, which is inartfully drafted, even
14 though he's referring to a trademark statute, when I read that,
15 it sounded to me more that he was complaining about our taking
16 manuals and materials as opposed to improperly using the
17 trademark.  That's why I say I don't know if they're talking
18 trademarks or copyrights.
19         THE COURT:  All right.
20         MR. LILLING:  And as far as the state causes of
21 action, I don't think there's jurisdiction, because I don't
22 think he has made out a prima facie case of any federal claim,
23 so then there's no reason for the Court to be looking at the
24 state causes of action.
25         THE COURT:  All right.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

76JFPRIC

1          MR. LILLING:  And that's really all we need.
2          THE COURT:  Is there anything further, Mr. Druz?
3          MR. DRUZ:  Yes, Judge, very briefly.  I just don't
4  believe it would be fair to consider the ownership issue.
5  Mr. Lilling had discovered it and had the opportunity to make
6  me aware of it, I only found out about it 3:30 today, which
7  handcuffed me in terms of being able to show the ownership of
8  the trademark and service mark.  That's all.
9          THE COURT:  Okay.  But you filed this action.  One
10 would think that as a matter of due diligence you would check
11 to make sure that your client actually owns the trademark
12 before you sue on it.
13         MR. DRUZ:  Judge, in my own defense, the letters which
14 were written to Pristine Capital Holdings that cover the
15 documents from the Patent and Trademark Office are all
16 addressed to Pristine Capital Holdings saying we have done what
17 you asked us to do, so I don't think I made a terrible
18 assumption.  Harold Goldstein, the premier patent and trademark
19 attorneys in Washington, would have made that mistake, but I
20 have spoken to Pristine and they told me, and I have asked them
21 before, that they do own these registered marks.
22         THE COURT:  All right.  There are a lot of issues
23 here.  Because there are a lot of issues here, it's clear to me
24 that emergency relief is not warranted.  Let's fix a schedule
25 for briefing on this motion for preliminary injunction.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                                    19
        76JFPRIC
 1              First of all, do you want to amend your complaint?
 2              MR. DRUZ:  I will want to, yes.
 3              THE COURT:  And try to clean it up?
 4              MR. DRUZ:  Yes, absolutely.
 5              THE COURT:  Because it's a train wreck.
 6              MR. DRUZ:  Okay.
 7              THE COURT:  When are you going to file an amended
 8     complaint?
 9              MR. DRUZ:  Can I just check one second, please?  Two
10     weeks?
11              THE COURT:  Whatever time you want.
12              MR. DRUZ:  I'd like 30 days.
13              THE COURT:  Take 30 days.
14              MR. DRUZ:  I'll take 30 days.
15              THE COURT:  You'll file an amended complaint.  Since
16     you're going to file an amended complaint, do you want to
17     withdraw this motion and file a motion when you file your
18     amended complaint?
19              MR. DRUZ:  Yes.
20              THE COURT:  All right.  This motion for preliminary
21     injunction is withdrawn.  File an amended complaint and a
22     motion for a preliminary injunction if you decide that's what
23     you want to do 30 days from today.  That is by July 19.  How
24     much time do you want to respond to the motion?
25              MR. LILLING:  Your Honor, I'm scheduled for an
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                    20
        76JFPRIC
 1     out-of-the-country business trip starting on the 26th, so I'm
 2     going to ask for a month from the 19th, otherwise, because I'll
 3     be gone for ten days.
 4              THE COURT:  August 17.
 5              MR. LILLING:  Okay, August 17.
 6              THE COURT:  Any reply by August 27.  And I'll hear
 7     oral argument on August 31 at 10:30.  I'll enter a scheduling
 8     order to that effect.  Is there anything further?
 9              MR. LILLING:  Your Honor, in the concluding portion of
10     my letter today, I asked the question of whether we might be
11     entitled to attorneys fees before being required to work on an
12     expedited basis for answering what's clearly a frivolous and
13     unjustified request for a TRO.  So I just leave that within the
14     Court's discretion.
15              THE COURT:  Well, you're about 4500 miles too far west
16     for that request.
17              MR. LILLING:  Okay.  Thank you, your Honor.
18              THE COURT:  In Great Britain, they do it, but not
19     here.
20              Mr. Druz, I think you better think through this case.
21     I will tell you viscerally, I'm not seeing any trademark
22     infringement here.  I see only fair use and at the end of the
23     day, if there's no statutory basis to be here under the
24     trademark laws or some other federal statute, then you should
25     be pursuing your contract claims in the palace of justice
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                    21
        76JFPRIC
```

```
 1  across the street, because otherwise you're just going to go
 2  through a lot more motion practice here, and if you decide to
 3  simply withdraw this case here and proceed across the street on
 4  a contract claim, just file a Rule 41 notice of dismissal.  You
 5  might be saving a lot of effort on everybody's part.  All
 6  right?
 7            MR. DRUZ:  Okay, Judge.  I hear you loud and clear.
 8            THE COURT:  All right.
 9            MR. DRUZ:  Judge, I didn't want to be discourteous.
10  Thank you for your courtesy yesterday in permitting me to go to
11  my son's graduation instead of coming in here.
12            THE COURT:  Of course.  All right, counsel, thank you
13  very much.
14            MR. LILLING:  Thank you, your Honor.
15            THE COURT:  I hope your interns think we're operating
16  on all cylinders, Mr. Lilling.  Have a good evening.
17            MR. LILLING:  Thank you.
18            (Adjourned)
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300